GALVESTON & W. RY. CO. v. CITY OF GALVESTON.

(Court of Civil Appeals of Texas. Galveston. May 9, 1911.)

1. INJUNCTION (§ 137*)—TEMPORARY INJUNCTION—GROUND FOR DENIAL.

Where a railroad has not for five or six years used a portion of its track which the erection of a sea wall by a city renders it impracticable to rebuild, a temporary injunction against interference by the city with the construction of a track on a new location, which would accomplish the whole purpose of the suit without a trial upon the merits, is properly refused.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

2. INJUNCTION (§ 152*)—APPLICATION FOR TEMPORARY INJUNCTION—DETERMINATION.

On an application for temporary injunction against interference by a city with the construction of a railroad track on a new location, where the city is confined on the hearing to a denial under oath of the allegations of the petition, and to such affidavits, rebutting the case as made by the petition and supporting affidavits, as could be procured by voluntary action of the witnesses, the cause will not be decided on the merits, though there is little dispute as to the main facts, the city being entitled to have its rights determined on a full trial, where it can have compulsory process for its witnesses, with the right of cross-examination.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 337; Dec. Dig. § 152.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by the Galveston & Western Railway Company against the City of Galveston. From an interlocutory order refusing a temporary injunction, plaintiff appeals. Affirmed.

Walter Gresham and T. D. Gresham, for appellant. M. E. Kleberg and I. Lovenberg, Jr., for appellee.

REESE, J. This is an appeal from an interlocutory order of the district court of Galveston county refusing a temporary injunction, upon petition of the Galveston & Western Railway Company, enjoining the city of Galveston from interfering with the plaintiff in laying its track along a relocation of its line across certain streets and alleys of the city, connecting its line on Avenue N with its line on Ninth street, in said city. Upon filing the petition, the application for a temporary injunction was set down for a hearing, and notice given to defendant. Defendant filed its answer, under oath, and the application was heard on petition, answer, and supporting and controverting affidavits. The district court refused to grant the temporary injunction, and from this order plaintiff prosecutes this appeal under the provisions of the act of 1907 (chapter 107), as amended by the Act Ex. Sess. of 1909, c. 34, authorizing appeals in such cases.

The following facts deduced from the allegations of the petition and answer, and the statements of the accompanying affidavits, are sufficient to explain the questions arising on this appeal, prefacing them with the following sketch, showing the old, and proposed new, location of appellant's tracks on Avenue N and Ninth street, and the connection between the two.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The Galveston & Western Railway Company was incorporated in 1887, and by its charter was authorized to construct, own, and operate a railroad, commencing at a point on Galveston Bay, in the city of Galveston, thence through the streets and public highways of the city to a point in the county of Galveston at or near Coronkaway Reefs, lying to the west of the city. The company acquired by purchase the properties of the Galveston, Brazos & Colorado Narrow Gauge Railway Company, which previously owned and operated a line of narrow gauge railway, beginning on Ninth street near Avenue A and running thence on Ninth street to a point near its intersection with Avenue N, and curving thence into Avenue N, as shown by the sketch, being the line marked "old location," and running westwardly along Avenue N to Thirty-Sixth street. This being the situation on March 8, 1889, the city council of Galveston passed an ordinance, sections 1, 2, 3, and 8 of which are as follows:

"Be it ordained by the city council of the city of Galveston:

"Section 1. That the rights of way heretofore granted in the city of Galveston to the Galveston, Brazos & Colorado Narrow Gauge Railway Company and to the Texas, Mexican Railway Company on Ninth street from Avenue A to Avenue N; thence along Avenue N to Thirty-Seventh street; thence along Thirty-Seventh street to Avenue T; thence westwardly along Avenue T to Fifty-Fifth street; with the right to curve south and west at any point west of Fiftieth street, be and the same are hereby confirmed. The right to construct, maintain, own and operate a railroad with either broad or narrow gauge tracks, or both, and with such side tracks, turnouts and switches as may be necessary, be and the same are hereby granted to the Galveston & Western Railway Company, as the successor of said railway companies, over and along the above mentioned streets, and on Avenue N, west from Thirty-Sixth street, with the right to curve northwardly from Avenue N at any point west of Fortieth street into Forty-Third street or at any street west of and parallel to Forty-Third street that said railway company may select and occupy; thence northwardly down the street selected, with the right to connect with the tracks of the Galveston, Houston & Henderson Railway Company, and the Gulf, Colorado & Sante Fé Railway Company at any point west of Forty-Third street. That the said railway company shall construct, operate and maintain its railway on the streets over which the right of. way is hereby confirmed and granted within one year from the date hereof, otherwise the rights herein granted shall be forfeited.

"Sec. 2. The right is hereby granted to said railway company to curve from Ninth street into Avenue N, from Avenue N into Thirty-Seventh street, and from Thirty-Seventh street into Avenue T, upon any degree of curvature not less than three degrees which said railway company may determine upon, with the right to come into Avenue A and connect with any and all railroads now, or that may hereafter be, constructed on that street, with the further right to curve into and construct, maintain, own and operate its railroad on Post Office Street or on Church street, from Forty-Third street westwardly to the western limits of the city. The said railway company shall construct their railway over Church or Post Office streets, as in this section granted, within one year from date hereof, otherwise the right to build on said streets shall be forfeited.

"Sec. 3. There is also hereby granted to said Galveston & Western Railway Company the right to construct, own, operate and maintain a railroad over and along Avenue N from Thirty-Seventh street to the western limits of the city, with the right to curve southwardly from Avenue N into and thence along any street west of Fortieth street; thence westwardly into and thence along any avenue to the western limits of the city with the right also to curve southwardly from the avenue selected into and thence along any street west of Forty-Third street; thence to a connection with its present line."

"Sec. 8. That in the event said railway company shall proceed to construct, maintain and operate a railroad over the right of way herein granted, then any other railway company desiring to participate in the ownership and operation of same may do so by paying an equal pro rata of the cost of said railroad over said right of way, and in case said railway companies cannot agree upon the cost of said railroad or upon the terms satisfactory among themselves, then the same shall be determined by a board of arbitrators, consisting of one arbitrator to be appointed by the city of Galveston, and one arbitrator to be appointed by the railway company or companies owning or operating the same; and in case of disagreement of said arbitrators, they shall appoint an umpire to decide the matter; and should the said railway company or companies refuse to appoint an arbitrator when applied to, then in that case, the city council shall proceed to determine the matter as hereinbefore provided. It is the object of this section to make a general railroad over the right of way herein granted, to the end that all railway companies that may now or hereafter terminate in Galveston, so desiring, may acquire equal rights in the ownership and operation of said railroad."

On July 17, 1889, the charter of the company was amended. By the terms of the amended charter, appellant was authorized to construct and operate a railroad "commencing in the city of Galveston at a point

on Avenue A, thence into and along Ninth street to Avenue N, thence along Avenue N to 43rd street * * * with the right to curve into and from any and all streets and avenues at any point it may select * *· * and to construct, operate and maintain its railroad along, across or upon any street, alley or lot in said city of Galveston over which the right of way may be legally acquired."

After the purchase by appellant, it broadened the gauge of the line, and continued to operate it along the line marked as "old location" until 1895 or 1896. The connection between Ninth street and Avenue N was built upon a trestle, which was so damaged by the water of the Gulf in 1895 or 1896, that trains could not be operated over it, and the connection was broken, and has never been re-established or used, except that during the construction of the Galveston sea wall (in 1903) O'Rourke & Co., contractors of that work, by agreement with appellant, and by permission of the county authorities, laid a connecting line alone the sea wall right of way between appellant's tracks on Ninth street and Avenue N. The county's permission was upon condition that the tracks should be removed upon the completion of the sea wall, which was done. As a result of the storm of 1900, the land upon which the trestle once stood, connecting the lines on Avenue N and Ninth street, became entirely submerged by the waters of the Gulf. This part of the old location is entirely outside of the sea wall, and it is not practically possible to rebuild and operate it, both on account of this fact and the further fact that to do so would necessitate the crossing of the sea wall right of way on Ninth street and Avenue N. This sea wall was built by the county of Galveston in 1903, and the crossing of the sea wall right of way by appellant with its tracks is forbidden by act of the Legislature.

On July 27, 1903, upon the petition of appellant, the Railroad Commission, by order duly made, granted to appellant the right to change its track, and to construct its railway from Avenue N into Ninth street upon any line it may select south of Avenue L and north of the sea wall, upon which it may legally acquire the right of way. On December 23, 1908, appellant applied to the board of city commissioners of the city of Galveston for leave to lay its tracks on the line marked on the sketch "Relocation," connecting its line on Ninth street with its line on Avenue N. The difference between the two locations is fully shown by the sketch referred to. This permission was never granted, but on September 22, 1910, a resolution was adopted, formally denying the application. On September 22, 1910, appellant undertook to lay its tracks on this relocation, when it was stopped and prevented from doing so by the city, the 100 feet of track so laid being forcibly removed, whereupon this suit was instituted to enjoin the city, its officers and agents, from interfering with the work aforesaid.

It further appears that after the sea wall was finished the city entered upon the work of raising the grade of the city—a work of great importance, and costing a large amount of money. This necessitated the digging of a canal along and just inside of the sea wall, and while this work was in operation it would have been impossible for appellant to reconstruct its connection between Avenue N and Ninth street on the line now marked as "Relocation." This grade-raising work was finished and the canal filled up in 1910, and not until this was done was it possible for appellant to have constructed its line along the proposed relocation after the construction of the sea wall in 1903.

After the destruction of the trestle in 1895 or 1896, no attempt was made to operate that part of its line between Avenue N and Ninth street. The evidence is not positive as to whether the connection between Avenue N and Ninth street was rebuilt and put in operation before or after the passage of the ordinance of 1889. The original trestle had been destroyed by a storm in 1886, but after it was so reconstructed the railroad was operated on the old location until 1895 or 1896, and never after that, and the evidence tends to show that the connection between Avenue N and Ninth street has never been used for the running of trains since 1895 or 1896, when the connection aforesaid was broken and abandoned.

In so far as the proposed relocation of appellant's line runs across private property, it has acquired the right of way over the same, except a small part which is in process of condemnation, and as to which appellant has complied with the law, so as to entitle it to enter thereon. The proposed relocation is located in a part of the city which is thinly populated at the present time.

[1] Many interesting and important questions are presented by the very able and exhaustive briefs and oral arguments of both parties, going to the merits of the entire controversy. We have very carefully considered the matter and have come to the conclusion, inasmuch as we have concluded that the district judge acted properly in refusing the temporary injunction on the ground that the appellant, upon the case-made, was not entitled to have the city ousted of its control over that part of its streets and alleys sought to be appropriated by appellant, and to be put in possession thereof without the consent of the city, in advance of a trial upon the merits, by a temporary writ of injunction, that it would serve no useful purpose to pass upon such questions.

It is true that there was notice and a hearing of the application; but the hearing was not upon the merits, and appellees were

confined to a denial, under oath, of the allegations of the petition, and to such affidavits, rebutting the case as made by the petition and supporting affidavits, as could be procured by voluntary action of such witnesses. The effect of the writ, if granted, would have been, not to preserve the status of the property as it had· theretofore existed, nor. to protect the possession of appellant, nor was it to restore to appellant a possession theretofore enjoyed by it, of which it had been tortiously or fraudulently deprived, as in Chaison Town Site Co. v. McFaddin, 121 S. W. 716, but to take from the city the possession and control of a certain portion of its streets and alleys, of which it was and had ·been in the undisputed control, and to put appellant in possession thereof— a possession which it had never theretofore exercised. Thus the whole purpose of the suit would have been accomplished by a temporary writ of injunction, issued by the court without a trial upon the merits, upon such hearing as could be had upon bill, answer, and affidavits.

In the case of Chaison Town Site Co. v. McFaddin, supra, there is a discussion of cases in which a temporary writ of injunction, such as is here prayed for, was denied, and the action of the district judge in granting such writ in that case was based solely on the ground that appellees had been for years in the full possession of the canal in question across appellee's land, with its consent, and that it had been, immediately preceding the issuance of the writ, forcibly and violently deprived of such possession, and the effect of the writ was to restore, pending the litigation, a possession thus forcibly and violently interrupted. The reasoning in that case fully sustains the district court in refusing the temporary writ in the present case. In 1 Joyce on Injunctions, §· 112, the law is stated that "The legitimate purpose and function of a temporary injunction is to preserve matters in statu quo until a hearing; if it undertakes, or if its effect is, to dispose of the merits of a controversy without a hearing, or if it divests a party of his possession or rights in property without a trial, it is void," and a number of decisions, federal and state, are cited in support of the text, and the text adds, "Thus, where a railway company had been in possession of a yard for making up its trains for more than 20 years, a temporary injunction, which restrained it from preventing the occupation of the ·yard by a street railway company, was held to be, not merely illegal, but absolutely void," citing Calvert v. State, 34 Neb. 616, 52 N. W. 687.

We think the doctrine is well settled, and no well-considered case can be found to the contrary. The point was decided by this court in the late case of Simms v. Reisner, 134 S. W. 278, in which it is said: "It is not the function of a preliminary injunction to transfer the possession of land from one person to another, pending an adjudication of the title, except in cases in which the possession has been fraudulently or forcibly obtained by the defendant, and the equities are such as to require that the possession thus wrongfully invaded be restored, and the original status of the property preserved pending the decision of the issues of title"— citing Chaison Case, supra. In addition to these cases, and those cited in note to Joyce on Inj., supra, we cite Toledo v. Detroit, 61 Mich. 9, 27 N. W. 717; Reynolds v. Graves, 66 Neb. 17, 92 N. W. 144; Arnold v. Bright, 41 Mich. 207, 2 N. W. 16; 22 Cyc. 740; 16 Am. & Eng. Ency. of Law, 345.

It is true that in some of the cases cited the preliminary or temporary injunction was granted without a hearing, while in the present case there was notice, the defendant answered, and the case was presented upon supporting and rebutting affidavits; but that, we think, can make no difference. There was not, and in the nature of things could not have been, such a trial as was necessary to authorize the action prayed for, which would have been to take the possession from appellee and put it in appellant, to be held and used by it until a trial upon the merits could be had in the district court, and thereafter until a final termination of the litigation.

[2] Appellant insists that the facts are all before us, and that this court should, upon the record thus presented, decide the whole case, and in support of its contention cites 1 Joyce on Injunction, §§ 23–375; Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810; Mayor of Knoxville v. Africa, 77 Fed. 505, 506, 23 C. C. A. 252. We have examined the authorities cited and do not think they support appellant's contention. Although there is very little dispute as to the salient and controlling facts of this controversy, there are certain subsidiary facts, the· exact effect of which upon the rights of the parties we cannot undertake to determine, as to which there is a conflict. As to the whole case, appellee has the right to have its rights determined by a full trial, where it can have compulsory process for its witnesses, with the right of cross-examination, before it is deprived of its possession and control of its streets.

We conclude that the court did not err in refusing the temporary injunction, and the judgment is therefore affirmed.

Affirmed.