ORT et al. v. BOWDEN et al.

(Court of Civil Appeals of Texas. Galveston. June 8, 1912.)

1. INJUNCTION (§ 5*)—MANDATORY INJUNCTION—WHEN GRANTED.

A mandatory injunction will not generally be granted until final hearing on the merits, unless on the showing of a clear right, and a case of necessity or extreme hardship, its object being to maintain the status quo, and not to determine the right itself; so that a mandatory injunction which, in effect, anticipates the judgment or gives some relief demanded to be given by the court, will seldom be granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 4; Dec. Dig. § 5.*]

2. INJUNCTION (§ 137*)—PRELIMINARY INJUNCTION—REFUSAL.

On an application for a temporary and permanent mandatory injunction against the city and other defendants to abate a baseball park as a nuisance, by restoring inclosed streets to their former condition, in which no judgment against defendants for depreciation of plaintiffs' property was sought, it appeared that the only damage sustained by plaintiffs was the depreciation in the value of their property occurring immediately upon the obstruction of the streets, but that the damages thus caused would not increase, and that no other damages would accrue to plaintiff by the obstruction between the date of the inclosure and the trial of the case upon the merits, and that, on removal of the obstruction, the former market value of the property would be restored. Held that, as the effect of the writ, if granted, would not be the preservation of the status of the property, but the accomplishment of the whole purpose of the suit without a trial upon the merits, the preliminary writ was properly refused.

[Ed. Note.—For other cases, see Injunction. Cent. Dig. §§ 307, 309; Dec. Dig. § 137.*]

3. NUISANCE (§ 72*)—PUBLIC NUISANCE—RIGHT OF PRIVATE PERSON—ACTION FOR ABATEMENT.

A private person, who suffers a special injury from a public nuisance different in kind from that of the community in general, may maintain an action to abate the nuisance, although his injury is such as may be compensated in the damages.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 164–169; Dec. Dig. § 72.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by W. F. Ort and others against M. C. Bowden and others. Application for temporary injunction denied, and plaintiffs appeal. Affirmed.

Geo. G. Clough, of Galveston, for appellants. Chas. P. Macgill, Mart H. Royston, and I. Lovenberg, all of Galveston, for appellees.

McMEANS, J. This suit was brought by W. F. Ort and others against the city of Galveston, the Galveston Commercial Association, and others for the abatement of an alleged nuisance. We adopt, as a fair statement of the issues involved, the following portion of the findings of the trial judge: "Plaintiffs bring this suit against the Galveston Commercial Association and the city of Galveston—there are other defendants whose relation to the case need not now be considered. They allege: That the Galveston Commercial Association has constructed in the city of Galveston a baseball park, completely closing Thirtieth street from Avenue Q½ to Avenue R, and encroaching 35 feet on the south side of Q½, from the west side of Twenty-Ninth street to a point

a short distance west of Thirtieth street, by a fence 10 feet or more in height; that the plaintiffs own lots abutting on Thirtieth street and Q½ and adjacent thereto, in close proximity to the structure so erected; that they suffer special injury from the erection and maintenance of the fence around the park and from the grandstand and other structures inside of it, in the depreciation of the value of their property and the obstruction thereby of the Gulf breeze, and pray a mandatory injunction, temporary and permanent, abating the same as a nuisance. The Commercial Association, answering, under oath, says that it is incorporated exclusively for the purpose of promoting the general welfare and prosperity of the city and to provide pleasure and amusement for the people; that it devotes its activities entirely thereto; that, pursuant to the general object of its organization. it has provided a baseball and amusement park for the city for playing the game and for other popular amusements, embracing substantially the area alleged by the plaintiffs. They further state that the location was purposely selected in an unsettled, or very sparsely settled, portion of the city, where such a structure was least likely to be objectionable to property owners; that the closing of Thirtieth street for one block and the inclosure of 35 feet off the south side of Avenue Q½ for about the same distance was indispensable to give the necessary space to play the game; that the consent of most of the property owners in the vicinity was previously obtained, the city of Galveston also duly consenting in the public interest; that the association has invested a large amount of money in the improvements and has leased the premises for certain days to the Galveston Baseball & Athletic Association, retaining supervision and control, the ownership of the improvements, and the right on other days to use the park for other pleasures and amusements for the people; that all of the property owned by the plaintiffs, is, and long has been, vacant and unimproved, except one lot owned by the plaintiff Maverick on Avenue Q and Thirtieth street, remote from the park inclosure; that the permission granted by the city for the use of so much of its streets as are occupied is for a period of five years, revocable on 30 days' notice; that ingress and egress to and from the properties owned by the plaintiffs are in no wise hindered, impeded, or obstructed by the baseball and amusement park, but that the same are as open and free as they ever were; that there is an unobstructed width of 35 feet on the north side of Q½ on which so much of the property of plaintiffs as is situated on said avenue abuts; that Thirtieth street at the point where inclosed has never been improved by the city and was, and long had been, practically unused, while Twenty-Ninth street is highly improved and much traveled; and that these constitute open, adequate, and con-

venient approaches to all of plaintiffs' lots in any wise affected by the construction of the park, and the inclosure of the park by a fence was completed before the petition in this case was filed, and the other structures necessary for the equipment of the grounds as a baseball park either completed or under contract and well under way." All the other defendants pleaded a general demurrer and general denial, and the defendants Bowden, Cheesborough, Hartel, Bradley, and Maloney disclaimed any interest in the obstruction, and alleged that the Galveston Commercial Association is the owner thereof. The application for the temporary injunction was heard by the trial judge upon bill, answers, and supporting and controverting affidavits. The application for the temporary writ was denied, and the plaintiffs, Ort, Markwell, and Maverick have appealed.

As stated by the trial judge, "numerous affidavits have been filed by both parties, but there is no difficulty in extracting from the mutual statements and admissions of the petition and answers all the facts necessary to a determination of the present issue." We may say, however, that it was shown by affidavits presented by the plaintiffs that by the inclosure of and encroachments upon the streets in question the property of each of the appellants had been substantially depreciated in value; such depreciation amounting to about $1,000 in the value of the property of each.

Appellants by several assignments of error, which we shall not discuss in detail, attack the action of the trial judge in refusing to grant the temporary mandatory writ of injunction. We think these assignments cannot be sustained.

[1, 2] The evidence warrants the conclusion that all the damages sustained by appellants is by way of depreciation in value of their property, and that this depreciation occurred immediately upon the construction of the inclosure across and upon the streets. There is nothing in the record to warrant the conclusion that the damages thus caused will increase with the passage of time, or that any other damages will accrue to plaintiffs by reason of the obstruction between the date of the inclosure, which was anterior to the filing of the suit, and the trial of the case upon the merits; but it is a fair inference from all the evidence that with the removal of the obstructions and the abatement of the alleged nuisance the depreciation will be repaired, and the former market value of the property will be fully restored.

No judgment against defendants for the depreciation of the value of the property was sought, but the restoration of the streets to their former condition, by removal of the obstructions thereon, was the sole purpose of the suit. While it is the undoubted right of the courts to grant preliminary mandatory writs of injunction, the more general rule is that such writ will not be granted until final

hearing on the merits, and not then unless necessary to a complete execution of the decree of the court. Joyce on Inj. § 97a. This author, in the first part of the section referred to, says: "An applicant for a preliminary mandatory injunction, quite as much as others, is required, however, to show a clear right, and a case of necessity or extreme hardship; and it is declared that the court will seldom grant a mandatory injunction pendente lite unless the plaintiff's right is so clear that the denial of the right must be either captious or unconscionable. Therefore mandatory injunctions which in effect anticipate the judgment or give some of the relief which it is sought to obtain by the decree of the court should be granted with caution and only when the necessity is great."

In 22 Cyc. 740, after defining preliminary injunctions and a discussion of the purpose of their issuance, it is said: "Their object is to maintain the status quo, to maintain property in its existing condition, to prevent further or impending injury, not to determine the right itself. Therefore, where the issuance of a preliminary injunction would have the effect of granting all the relief that could be obtained by a final decree and would practically dispose of the whole case, it will not be granted. So it will not be granted where the injurious acts have been completed, etc." Further on, on page 743, it is said: "Since an injunction mandatory in its nature generally does more than to maintain the status quo, it is generally improper to issue such an injunction prior to final hearing; and it is frequently said that such a preliminary injunction will never issue. * * * If the issuance on preliminary application of an injunction mandatory in nature will have the effect of granting to the complainant all the relief that he could obtain on final hearing, the application should be refused except in very rare cases, and then only where the complainant's right to the relief is clear and certain."

The principles quoted from the authorities cited above have been upheld by decisions of the courts of this state. Thus in Galveston & Western Railway Company v. City of Galveston, 137 S. W. 724, which was an appeal from an interlocutory order of the district court refusing a temporary injunction upon the petition of the appellant praying for an injunction against the city of Galveston to restrain it from interfering with the appellant in laying its track along a relocation of its line of railway across certain streets and alleys of the city, this court, in an opinion by Associate Justice Reese, says: "The effect of the writ, if granted, would have been, not to preserve the status of the property as it had theretofore existed, nor to protect the possession of appellant, nor was it to restore to appellant a possession theretofore enjoyed by it, of which it had been tortiously or fraudulent-

ly deprived, * * * but to take from the city the possession and control of certain portions of its streets and alleys, of which it was and had been in the undisputed control, and to put appellant in possession thereof. * * * Thus the whole purpose of the suit would have been accomplished by a temporary writ of injunction, issued by the court without a trial upon the merits, upon such hearing as could be had upon bill, answer, and affidavits." And the judgment appealed from was affirmed. Simms v. Reisner, 134 S. W. 278, was an appeal from an order of the district court of Harris county granting a temporary injunction restraining Simms from continuing to bore for oil on certain land claimed by plaintiff. Appellant was in possession of the property. In deciding the case, Chief Justice Pleasants of this court uses this language: "An injunction is not a remedy which can be used for the purpose of recovering title or right of possession of property, and it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title, except in cases in which the possession has been forcibly or fraudulently obtained by the defendant, and the equities are such as to require the possession thus wrongfully invaded to be restored, and the original status of the property to be preserved pending the decision of the issue of title. Jeff Chaison Town Site Co. v. McFadden, Weiss & Kyle Land Co., 56 Tex. Civ. App. 611, 121 S. W. 716. The trial court did not order the possession of the land delivered to appellees, but he enjoined the appellant from using it for the purpose for which it was leased, and thereby rendered his possession worthless. This should not be done unless the use of the property by appellant would cause injury to appellees against which they could only be adequately protected by an injunction," etc. See, also, Southwestern Telegraph & Telephone Co. v. Smithdeal (Sup.) 136 S. W. 1049.

All of the Texas cases cited by appellants to sustain their contention, and in which the granting of mandatory injunctions was upheld, are cases in which such injunctions were granted on final hearing, and not, as sought in this case, before a trial on the merits. We think it clear that, as stated in Railway v. City of Galveston, supra, the effect of the writ, if granted, would have been, not to preserve the status of the property, but that the whole purpose of the suit would have been accomplished by a temporary writ of injunction, issued by the court without a trial upon the merits. We think, therefore, the court did not err in refusing to grant the temporary writ prayed for, and all of appellants' assignments which complain of such refusal must be overruled.

[3] The trial judge in his conclusions of law advances the following: "It is and al-

ways has been the policy of the law to leave the prosecution for public nuisances or purprestures to the state, or its proper law officers, and not to vest the vindication of a public wrong of this nature in the hands of the private citizen; nevertheless, where the individual suffers a special injury in such case, different in kind from that of the community in general, he may maintain an action for the abatement of such nuisance, provided his injury is not such as may be compensated in damages, in which case he is remitted to his action for such damages, still leaving the question of abatement to be dealt with by the public authorities."

Appellants by appropriate assignments of error attack the foregoing conclusions, and we think the assignment must be sustained. While it may be and doubtless is the duty of the city of Galveston to prevent or abate such purprestures as here complained of and by proper proceedings to vindicate a public wrong done to a citizen in closing up public streets upon which his property abuts or to which it is adjacent, the citizen who suffers a special injury is not left without remedy in case the city fails to respond to its duty, nor is he remitted to his action for damages alone, although the injury suffered by him may be compensated in damages. Certainly the citizen so injured would not be required to wait for the city to act, when the city itself has consented to the doing of the very thing which has caused the damages and without which consent the very thing would not and could not have been done, and also when, in the very suit in which the citizen asks for the correction of the wrongs from which he suffers special injury, the city joins with the other alleged wrongdoers in asking that the correction be denied. We think the case of Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288, in which a writ of error was denied by the Supreme Court, is decisive against the conclusion of the trial judge to the effect that the abatement of a public nuisance must be left to the state or its proper officer, in so far as that rule is applicable to the facts of this case. It appears that Sullivan, under the authority of the city of San Antonio, had closed up a portion of an alley upon which Mrs. Kalteyer's residence homestead abutted, and that the city council had refused her application for relief. Mrs. Kalteyer brought suit in the district court of Bexar county against Sullivan and the city of San Antonio for an injunction to restrain them from obstructing the alley, and on a hearing on the merits the injunction was denied. In reversing the judgment of the district court and rendering judgment for the appellant, the Court of Civil Appeals, in part, says: "An abutting owner has rights not shared by the public at large, special and peculiar to himself, which arise out of the very relation of his lot to the street in front or alley in the rear of it. These rights are property, and as such are as sacred from legislative invasion as his right to the lot itself (citing authorities). The abutting owner's right of access to and from the street, subject to legitimate public regulations, is as much his property as his right to the soil within boundary lines. And when he is deprived of such right of access, or any other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulations, he is deprived of his property. When it is asserted that the Legislature has plenary power over municipal streets, it must be understood that it has power over them as streets, for it cannot be justly affirmed that it may deprive them of the character of streets to the special injury of abutters without yielding them fair compensation for the loss actually sustained. The city council of San Antonio have no more power over the streets of the city than is granted by the Legislature, nor can the Legislature grant such power as would in its exercise by the council damage the property of an abutting owner without providing adequate compensation for such damages. The power vested in the Legislative over public highways, which it may delegate to towns and cities over streets within their limits, is for the benefit of the public, and should by municipalities be always exercised in furtherance of the purpose for which it is conferred. When the representatives of the corporation upon whom this power is conferred close a highway against the use and to the detriment of the public, and turn it over to a private individual for his private use, they pervert the law, and violate the trust which it is their duty to faithfully execute."

The conclusion of the trial judge that, although the citizen suffers a special injury different in kind from that of the community in general, he may not maintain an action for the abatement of the nuisance if his injury is such as may be compensated in damages, is opposed to the doctrine laid down in Southwestern Telegraph & Telephone Co. v. Smithdeal, 136 S. W. 1052, wherein our Supreme Court says: "The tendency of the holdings of the Supreme Court has been in recent years to so modify the common-law doctrine of denying the equitable remedy of injunction where there exists an adequate remedy at law, as that remedy is commonly understood, as to hold that article 2989, Revised Statutes, gives the remedy by injunction not only 'in all other cases where the applicant for such writ may show itself entitled thereto under the principles of equity,' but in addition thereto, the remedy by injunction is given 'where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant. Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994. * * * Applying the principles here laid

down, if it were shown that the wires or cables of defendant's line, left in their then place, would kill or destroy plaintiff's trees, he would be entitled to the extraordinary remedy sought, although he would have his action for damages for destruction of his trees."

It should be understood that in deciding this case we have not anticipated questions involving the right of the court to grant the injunction prayed for on final hearing upon the merits, but have decided only such questions as assail the judgment of the court in refusing to grant the writ before final trial. Because the court did not err in refusing the injunction sought, the judgment from which this appeal is taken is affirmed.

Affirmed.