GALVESTON COMMERCIAL ASS'N et al.
v. ORT et al.

(Court of Civil Appeals of Texas. Galveston. March 4, 1914. Rehearing Denied March 26, 1914.)

1. MUNICIPAL CORPORATIONS (§ 697*) — STREETS — OBSTRUCTION — RIGHT TO SUE — NONABUTTING PROPERTY OWNER.

One whose property does not abut on a street obstructed by a baseball park fence, in the absence of proof that the construction of the park and fence depreciated the value of the lots, or that he had suffered annoyance or inconvenience therefrom not shared by the community in general by reason of the obstruction, was not entitled to compel the removal of the fence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1502–1505; Dec. Dig. § 697.*]

2. MUNICIPAL CORPORATIONS (§§ 680, 681*)— STREETS — OBSTRUCTION — AUTHORITY OF CITY COMMISSIONERS.

The city commissioners of Galveston, though clothed by its charter with general power to control, open, close, and alter streets, had no right, as against an abutting property owner, to grant to a private corporation or association of persons the exclusive right to obstruct streets or parts of streets for a term of years for personal profit by the construction of a baseball park.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. §§ 680, 681.*]

3. MUNICIPAL CORPORATIONS (§ 671*) — STREETS—OBSTRUCTION — RIGHTS OF ABUTTING OWNER.

Independent of the question of nuisance, an owner of property abutting on a street has such property rights therein as entitle him to restrain the partial or total obstruction thereof, under purported municipal authority, by the construction of a baseball park, even without proof that his property has depreciated in value as the result of the obstruction, or that it has operated to his injury by way of discomfort, inconvenience, or annoyance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1447–1450; Dec. Dig. § 671.*]

4. MUNICIPAL CORPORATIONS (§ 671*) — STREETS—OBSTRUCTION—ABUTTING OWNERS —REMEDY.

Where a city, without authority, authorized a private corporation to obstruct portions of certain streets by the construction of a baseball park, an abutting owner was entitled to enjoin the obstruction and was not limited to an action for damages, though the defendants were amply able to pay damages.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1447–1450; Dec. Dig. § 671.*]

5. MUNICIPAL CORPORATIONS (§ 671*) — STREETS—OBSTRUCTION — ABUTTING OWNER —OWNERSHIP OF PROPERTY—PROOF.

Where, in an action by an abutting owner to restrain the obstruction of a street, the title to the owner's lots was not in issue, the introduction of his deed, proof of prior possession, and recognition of his title by defendant, in the absence of rebutting evidence, was sufficient to show his capacity to sue.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1447–1450; Dec. Dig. § 671.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by W. F. Ort and others against the Galveston Commercial Association and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

M. H. Royston and I. Lovenberg, Jr., both of Galveston, for appellant City of Galveston. Charles P. Macgill and James .B. & Charles J. Stubbs, all of Galveston, for appellant Commercial Ass'n. George G. Clough, of Galveston, for appellees.

McMEANS, J. This is a suit brought by W. F. Ort, Russell Markwell, and John F. Maverick against the city of Galveston, the Galveston Commercial Association, and others, whose relation to the case need not now be considered, for the abatement of a nuisance created by the defendants by entirely inclosing one and partly closing two public streets in the city of Galveston. Plaintiffs alleged that the Galveston Commercial Association has constructed in the city of Galveston a baseball park, completely closing Thirtieth street from Avenue Q½ to Avenue R, and encroaching 35 feet on the south side of Q½ from the west side of Twenty-Ninth street to a point a short distance west of Thirtieth street, by a fence 10 feet or more in height; that the plaintiffs own lots abutting on Thirtieth street and Q½ and adjacent thereto, in close proximity to the structure so erected; that they suffer special injury from the erection and maintenance of the fence around the park and from the grandstand and other structures inside of it, in the depreciation of the value of their property and the obstruction thereby of the Gulf breeze; and pray that the nuisance created by the erection of the fence and other structures be abated, and for a mandatory injunction requiring the defendants to remove the same.

The defendants specially pleaded that the baseball park is located on the southeast quarter of outlot 114, and denied that any avenue or street had been opened or dedicated to the public use through said outlot, or that the use thereof as a baseball park in any way depreciated the value of adjacent property. They alleged that the Galveston Commercial Association has, among its objects and duties, the promotion of the prosperity of the city, in which are included the

right and duty of encouraging the bringing of people to the city by assisting and providing for them, and for its citizens, recreation and amusement, one of the principal purposes of that body being to aid in building up the city as a commercial and pleasure resort; that, with such end in view, said association obtained authority from the city commissioners of the city of Galveston to inclose for a period of five years from February 22, 1912, a part of said outlot 114 for the purpose of building a baseball and amusement park, included in which is a part of the sidewalk along the south side of the southeast quarter, to a point 42 feet and 10 inches beyond what would be the intersection of Thirtieth street, if it were opened, and also including for the same distance what would be the south half of Avenue Q½ if it were opened; admitted that it did construct on the property so inclosed the fences, grandstands, and other improvements alleged by plaintiffs, and charged that said association had expended in making such improvements the sum of $3,500, and that the same has improved a vacant part of the city, and had brought the property in the vicinity to the notice of many persons desiring to invest or build, and is a benefit to the same and to the community generally; that no property owners or residents are deprived of ingress or egress to any property abutting on what would be Q½ and Thirtieth streets, if opened. Defendants further pleaded that the property that defendant Ort claims he owns consists of two unimproved lots, including one-half of the alley, and is located on the northwest corner of Twenty-Ninth street and what would be Avenue Q½, if opened; that the north half of Avenue Q½ is 35 feet wide, and that Ort's lots abut on this open space, and one of said lots abuts on Twenty-Ninth street, which is 80 feet wide and improved; that the plaintiff Markwell does not own or claim any property abutting on Avenue Q½ or Thirtieth street; that the property which plaintiff Maverick claims to own is situated on the southwest corner of Avenue Q and what would be Thirtieth street, if opened. They further alleged that the defendant Galveston Commercial Association is amply solvent and able to respond to any judgment for damages which plaintiffs might recover against it growing out of the matters complained of.

The case was tried before a jury, but, after the parties had introduced their testimony, the court instructed the jury to return a verdict for the plaintiffs, which was done, and judgment was entered thereon in their favor requiring and compelling defendants to remove the obstructions, buildings, and fences from Avenue Q½ between Twenty-Ninth and Thirty-First streets, and from Thirtieth street between Avenue Q½ and Avenue R, such removal to be made within 90 days from date of judgment, and from hindering or in any way interfering with the plaintiffs in their right to use all of said Avenue Q½ for a width of 70 feet and said Thirtieth street in connection with their properties or as members of the public. From this judgment the defendants have appealed.

When the original petition in this case was filed, the plaintiffs prayed for the issuance of a temporary mandatory injunction requiring the removal of the obstructions above named pending a trial upon the merits, but the writ prayed for was denied, and, upon the appeal by plaintiffs from the order denying the writ, the action of the court below was sustained. See Ort v. Bowden (Civ. App.) 148 S. W. 1145.

Avenues Q, Q½, and R run east and west, and Twenty-Ninth street and Thirtieth street run north and south. These avenues and streets have long been opened for public use and recognized by the public and the city of Galveston as public thoroughfares, and have been graded and some of them paved by the city. The Galveston Commercial Association applied to and obtained from the city commissioners of the city of Galveston permission to construct a baseball and amusement park in the southeastern section of outlot 114, and also asked, and over the protest of the plaintiffs obtained, permission to construct the fence around the park in such a way as to build its northern line in the center of Avenue Q½ and to entirely close Thirtieth street from Avenue Q½ to Avenue R, and also in constructing the south line of the park to encroach 16 feet on the north side of Avenue R. The permission thus granted was acted upon, so there was taken into the inclosure 35 feet off the south side of Avenue Q from the intersection thereof with Twenty-Ninth street to a point about 42 feet west of Thirtieth street, and Thirtieth street was entirely closed between Avenues Q½ and R. Plaintiff Ort owns two city lots situated at the northwest corner of Avenue Q½ and Twenty-Ninth street, and these lots abut on Q½ at a point where its width of 70 feet is reduced, by the construction of the fence in its center, to 35 feet. The plaintiff Markwell owns three city lots situated at the southwest corner of Twenty-Ninth street and Avenue Q; and the plaintiff Maverick owns two lots on the southwest corner of Thirtieth street and Avenue Q. Markwell's lots do not abut on any street that is obstructed by the park fence, but Maverick's lots abut on Thirtieth street, which was closed by the fence, but not immediately upon that part where the obstruction is; the nearest line of his lot to the construction being 175 feet. Ort's lots at the time of the building of the fence were vacant and unoccupied, and remain so, but prior to the storm of 1900 there was a house upon them, occupied by his tenants. Markwell's lots were vacant at the time the park was inclosed, but after this suit was brought he built a house thereon, which he now occupies as his home. Maverick's lots

had a house or houses upon them, and before and since the obstruction of Thirtieth street by the park fence the houses were and are occupied by his tenants. The following map will serve to show the relation of the park to the streets and avenues named and to the properties of the plaintiffs, and to illustrate the contention of the parties:

The City of Galveston was chartered by special act of the Legislature (Acts 29th Leg. [Sp. Laws] c. 37). A portion of section 34 of its charter, relating to the control of the streets by the city commissioners, provides, among other things, that they shall have exclusive power to control, open, close, and alter the streets. Whether the park inclosure depreciated the value of plaintiffs' properties was a controverted fact issue; several witnesses, besides the plaintiffs, testifying that the market value was depreciated thereby, and several witnesses for defendant testifying that it was not. The park has been leased by the Galveston Commercial Association to the Galveston Baseball Club, and the latter uses it for private profit, charging admission fees to see baseball games. At times when the park is not used for playing the game, the Commercial Association has the right to use the grounds and improvements for other athletic events and for meetings during the cotton carnival. There was neither averment nor proof that defendants were insolvent, nor that a judgment against them for damages could not be collected, nor was there any proof of any injury or damage save the diminution of the value of the property, and that was met by contradictory proof. A deed from S. B. Smith to Wm. J. Ort, conveying the outlots, contains this recital: "Avenue Q½ is open on the south of these lots, and we dedicate same (if not previously done) to the public use." Plaintiffs also introduced in evidence a deed from the Galveston City Company to J. Pinkney Henderson, dated December 20, 1840, whereby the said Galveston City Company did bargain and sell, grant, and convey to the said J. Pinkney Henderson, his heirs and assigns, all the certain lots or parcels of land situate, lying, and being in the city and county of Galveston and republic of Texas, and known, designated, and described in the plan of said city as the northwest, northeast, and southwest quarters in block No. 113 of the outlots between Thirty-First and Twenty-Third streets and Avenues Q and R and the northwest and northeast quarter in block No. 114 of the said outlots between Twenty-Ninth and Thirty-First streets and between Avenues Q and R; said deed containing the following recital: "Witnesseth, that the said directors as aforesaid having by their acknowledged agent heretofore held a sale at public auction of lots in the city of Galveston at and before which sale it was proclaimed and made known that the blocks or squares represented in the plan of said city were of the dimensions of three hundred feet by two hundred and sixty feet, with an alley twenty feet wide in the center, and were divided into fourteen lots each, the numeration of which commenced with lot number one at the northwest corner of every block and was continued on the north front of forty-two feet, ten inches, with a depth of one hundred and twenty feet, except lots numbers one and fourteen which have each forty-three feet front. And that said company expressly reserved to itself the right of laying out other lots and squares with streets and alleys on the north front of the city up to the channel of the bay in conformity with the general plan exhibited at the sale."

[1] We will not discuss appellants' assignments of error in detail. Our conclusions upon the pleadings and evidence are: (1) That the property of the plaintiff Markwell, as shown by the testimony, does not abut on any street obstructed by the park fence, and that his rights in the streets obstructed are such only as the community generally are entitled to enjoy; and in the absence of proof conclusively showing that he has suffered damages in the depreciation of the value of his lots (and this was an undecided controverted issue of fact), or that he was caused to suffer annoyance or inconvenience not shared by the community in general, by reason of the obstructions, we do not think that the court was authorized to render judgment in his behalf. However, as the judgment was properly rendered in favor of the defendants Ort and Maverick, as we shall presently undertake to show, the appellants have no right to complain of the decree in favor of Markwell unless it be in reference to costs, and no complaint is made on that

score. Scott v. City of Marlin, 25 Tex. Civ. App. 353, 60 S. W. 969.

[2, 3] We shall not attempt to review or reconcile the various decisions in this state bearing more or less directly on the question here involved. The question is simply this: Had the city commissioners of the city of Galveston, although clothed by the charter with the general power and authority to control, open, close, and alter the streets, the right, as against an abutting property owner, to grant to a private corporation, association, or persons the exclusive use of the streets or parts of streets to be used five years for private profit or gain? Or the question may be put this way: Has an abutting owner the right to cause to be abated, as a nuisance, an obstruction placed in a street which wholly or partly closes the same, and which in any material respect interferes with the free use and enjoyment thereof, although the obstruction is authorized and permitted by the city, which, under its charter, has the exclusive power to control, open, close, and alter the streets; the streets thus partly or wholly closed not being used by the city or applied to any public use, but exclusively by private persons for profit? We think the first question must be answered in the negative and the second in the affirmative. From our findings of fact and the map showing the location of the property of Ort and Maverick, it will be seen that Ort's lots abut on Avenue Q½, one-half of which has been appropriated for private use, and Ort's use of that portion denied. The construction of the fences upon the street constituted a purpresture and a nuisance. People v. Harris, 203 Ill. 272, 67 N. E. 785, 96 Am. St. Rep. 304. And this is true even if sufficient room was left for a passageway. 2 Dillon on Mun. Corp. § 702; Hoey v. Gilroy (Com. Pl.) 14 N. Y. Supp. 161. Thus in Dillon, § 702, it is said that power to a municipal corporation to establish markets and build market houses will not give the authority to build them on a public street; that such erections are nuisances, though made by the corporation, although sufficient space be left for the passage of vehicles and persons. If, then, a municipal corporation, expressly authorized by its charter to establish markets and market houses, is without authority to erect structures for public purposes, upon the public streets, a fortiori the power possessed by the city of Galveston under its charter to control, close, and alter the streets did not authorize it to empower private persons to erect structures upon public streets for private use.

But, independently of the question of nuisance vel non, we think that Ort, as an abutter, had such property rights in the street itself as entitled him to have the obstruction thereon removed, even though he failed to show that his lots were depreciated in their market value or that the obstruction in some other way operated to his hurt, by way of inconvenience, discomfort, or annoyance. The Supreme Court of Illinois, in Field v. Barling, 149 Ill. 556, 571, 37 N. E. 850, 854 (24 L. R. A. 406, 41 Am. St. Rep. 311), referring to the rights of abutting owners, says: "The dedication of the street by the plat, the sale of lots with reference to it, conveyance of abutting lots, and the payment of money for the conveyances were elements sufficient to create the right. The right may be regarded 'in the nature of an incorporeal hereditament. It becomes appurtenant to the lot. As rights secured they are plain; to have the street kept open, so that free access may be had to and from the lots abutting on the street." In the later case of Pennsylvania County v. Chicago, 181 Ill. 289, 54 N. E. 825, 53 L. R. A. 823, the court adjudged that the title to the streets in Chicago was vested in the city, and "it has the conservation, control, management, and supervision of such trust property, and it is its duty to defend and protect the title to such trust estate. The city has no power or authority to grant the exclusive use of its streets to any private person or for any private purposes, but must hold and control the possession exclusively for public use, for the purposes of travel and the like."

The general doctrine is thus stated in Dillon on Municipal Corporations (5th Ed.) § 1916: "Property is that congeries of rights secured by law in and over land or other things, which in the aggregate constitute the owner's title thereto, his ownership, his right of use and enjoyment, and his right of disposition, as against competing claims on the part of others. For example, an abutting owner's right to access to and from the street, subject only to legitimate public regulation, is as much his property as his right to the soil within his boundary lines. * * * When he is deprived of such right of access or other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulation, he is deprived of his property." Again in section 1123 it is said: "But it was further seen that he (the abutting owner) had certain rights not shared by the public at large, special and peculiar to himself, and which arose out of the very relation of his lot to the street in front of it;" and that these rights, whether the bare fee of the street was in the lot owner or the city, were rights of property, and as such his right to the lot itself.

In Lewis on Eminent Domain, where the adjudged cases are referred to and examined, it is said: "When the owner of a tract of land lays the same out into lots and streets and sells the lots, the purchasers of such lots acquire as appurtenant a private right of way and access over the streets. The private right arises without an express grant and in the absence of any statute. The law presumes that the parties had in mind the advantages to be derived from the use of the

proposed streets, and implies a right to such use as a part of the grant. * * * Therefore, in the case of such a grant, there arises by operation of law a private right to use the streets in connection with the lot of each proprietor, which is as inviolable as any right of property. * * * The existence of these private rights and easements is therefore entirely independent of the mode in which the highway is established, or the estate or interest which the public acquires in the soil of the street, whether a fee or less. Lewis on Eminent Domain (2d Ed.) § 91f.

The case of Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288 (writ of error denied by the Supreme Court) is in line with the authorities above cited. In that case Sullivan sought and obtained from the city council of the city of San Antonio permission to close a portion of an alley which was a public thoroughfare running through a block in said city, in which block both he and Mrs. Kalteyer owned lots abutting on the alley. Mrs. Kalteyer's lot was located with reference to the part of the alley sought to be closed by Sullivan, pursuant to the permission given him, substantially as is the lot of plaintiff Maverick with reference to that part of Thirtieth street inclosed by the defendant Commercial Association. A map of the block given in the opinion shows the relative position of the lots of each to the alley. Mrs. Kalteyer brought suit against Sullivan and the city of San Antonio seeking to enjoin the closing of the alley, and on a trial before a jury the injunction was denied, and she appealed. It was shown on the trial that the charter of the city of San Antonio conferred upon the council the exclusive power over the streets, and gave it the right to open, alter, and abolish them. In that case, as in this, the city authorities were appealed to by the abutter for redress, but redress was denied. In reversing the judgment and rendering judgment for appellant, the court, after referring to certain sections of Dillon on Municipal Corporations, from which we have quoted, says: "When it is asserted that the Legislature has plenary power over municipal streets, it must be understood that it has power over them as streets, for it cannot be justly affirmed that it may deprive them of the character of streets to the special injury of abutters without yielding them fair compensation for the loss actually sustained. The city council of San Antonio has no more power over streets than is granted by the Legislature, nor can the Legislature grant such power as would, in its exercise by the council, damage the property of an abutting owner without providing adequate compensation for such damages. The power vested in the Legislature over public highways, which it may delegate to towns and cities over streets within their limits, is for the benefit of the public, and should by municipalities be always exercised in furtherance of the purpose for which it is conferred. When the representatives of the corporation, upon whom this power is conferred, close a highway against the use and to the detriment of the public, and turn it over to a private individual for his private use, they pervert the law, and violate the trust which it is their duty to faithfully execute."

[4] Such being the law, it must be held, we think, that the appellees are not remitted to their action for damages, even though it be shown that the only injury suffered by them as a result of the closing of the street is the pecuniary damage caused by the depreciation in the value of their lots. In other words, we do not think that appellees Ort and Maverick can, in the circumstances of this case, be deprived of their property rights in the streets, against their will, by allowing them a recovery for the amount of damages sustained to their lots by reason of the inclosure. We had occasion to pass upon that question on the appeal of this case by plaintiffs from the order refusing to grant a temporary mandatory injunction (Ort v. Bowden, 148 S. W. 1145), where a like contention was assailed, and upon the authority of Telegraph, etc., Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1052, and Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994, the contention was overruled. We think that, under the facts there stated, the ruling was correct, and we see nothing in the facts of the case, as presented on this appeal, to require us to depart from it.

[5] We will discuss but one other contention made by appellants, and that arises upon the admission, over the objection of defendants, of oral testimony by plaintiffs Ort and Markwell of their ownership of and title to the lots abutting on or adjacent to the streets closed. Plaintiff Markwell, by reason of the remoteness of his lots to the obstruction in question, was not entitled to a judgment requiring the removal of the structures, and the judgment will not be reversed because of any error in admitting his testimony as to his ownership of lots if the testimony on this issue was sufficient to prove the ownership by the other defendants of the lots they alleged they owned. Ort's lots were vacant at the time the park fence was built, and had been so since the storm of 1900, which destroyed the improvements thereon. He testified he owned the lots. Prior to the storm the lots had improvements upon them and were then in his possession and occupied by his tenants. He introduced a deed from W. J. Ort conveying to himself the lots he claimed, and a map offered in evidence by defendants is marked to show these lots as those of plaintiff Ort. He introduced in evidence, as an admission against interest, extracts from the original answer of the defendant Commercial Association, sworn to by its president, as follows: "Defendant further alleges

that the property of W. F. Ort of two unimproved lots, including one-half of the alley, is located on the northwest corner of Twenty-Ninth street and Avenue Q½." The title to Ort's lots was not in issue, and we think that his deed, his prior possession, and recognition of his title by defendant Commercial Association, in the absence of some rebutting evidence, was sufficient to maintain his action. Railway v. Wallace, 74 Tex. 585, 12 S. W. 227. But, if we are mistaken in this, we maintain that the judgment should be affirmed, for the evidence shows that plaintiff Maverick was, on account of the situation of his property on Thirtieth street with reference to the fence that closed the same, equally entitled to maintain the action for a mandatory injunction, and further that he was in actual possession of his lots, and no question is made as fo the sufficiency of the evidence offered by him to prove his ownership.

We have carefully examined all of appellant's assignments of error, and the several propositions presented under them, and are of the opinion that reversible error is not pointed out in any of them. Upon the whole case as made by the pleadings and evidence, no other verdict and judgment than one in favor of the appellees Ort and Maverick should have been rendered, and therefore the judgment of the court below is affirmed.

Affirmed.