**SIGEL v. BUCCANEER HOTEL CO. et al.**
No. 9505.

Court of Civil Appeals of Texas. Galveston.
March 27, 1931.

Rehearing Denied May 28, 1931.

Moody, Jr., the city of Galveston, and the mayor and members of the board of commissioners of said city. After naming the defendants and describing the portion of the street alleged to be unlawfully obstructed and closed, and plaintiff's abutting property, the petition alleges, in substance: That on or about the 15th day of September, 1927, the city of Galveston, acting by and through its board of commissioners, passed an ordinance closing that portion of the street before described, and entered into a contract with the defendant W. L. Moody, Jr., giving him the right to occupy and use said portion of the street by erecting thereon a portion of a hotel building to cost approximately $300,000, such right to the use and occupancy of the street to continue as long as the hotel provided for in the ordinance should be maintained by W. L. Moody, Jr., his successors or assigns.

The defendants Buccaneer Hotel Company and W. L. Moody, Jr., answered by general demurrer, special exceptions, and specially pleaded that, in the construction of the hotel, they had complied with the provisions of the ordinance of the city of Galveston set out in plaintiff's petition, and that this ordinance was a valid exercise of the city's control of its streets and gave them authority for obstructing the street in the manner and to the extent stated in plaintiff's petition, and plaintiff had full knowledge that a portion of the building was being constructed in the street and without objection he permitted them to expend large sums of money in its construction. They further specially pleaded: "That in or about the year 1928, defendant Buccaneer Hotel Company commenced the construction of a hotel building on the premises so owned by it, and that a portion of said building occupied a part of the portion of said Avenue Q closed by said ordinance; that defendant Buccaneer Hotel Company expended approximately Seven Hundred Fifty Thousand ($750,000.00) Dollars in the construction of said building and that the plaintiff had full knowledge of and assented to the placing of a portion of said hotel building on the part of Avenue Q so closed by said ordinance; that the plaintiff willfully and maliciously assented to the erection of said hotel building and raised no objection thereto during the construction thereof, well knowing that said defendant was expending a large sum of money in the erection of said improvements, and that if it was required to remove the portion of said building occupying the closed part of Avenue Q, after the same had been completed, that the damage and injury to said defendant, Buccaneer Hotel Company, would be enormous; that on account of the large sum of money involved in the construction of said building and the damage and injury to defendant, Buccaneer Hotel Company,

Albert R. Young, of Houston, for appellant.

Frank S. Anderson and McDonald & Wayman, all of Galveston, for appellees Buccaneer Hotel Co. and others.

Bryan F. Williams, of Galveston, for appellees City and others.

PLEASANTS, C. J.

This is a suit by appellant against the appellees for a mandatory injunction and, in the alternative, for damages for alleged unlawful obstruction and closing by appellees of a portion of a public street of the city of Galveston upon which appellant is an abutting property onwer. The suit is brought against the Buccaneer Hotel, a corporation, W. L.

In the event it should be required to remove the portion thereof occupying the closed part of said Avenue Q, it was the duty of plaintiff to advise said defendant, Buccaneer Hotel Company, of his objections thereof, and by reason of his failure to so act, and of the assent of the plaintiff to the erection of said building and occupancy of said closed portion of Avenue Q, and of his said willful and malicious conduct, the plaintiff is estopped from maintaining this suit for injunctive relief, or for damages."

The defendants city of Galveston and the mayor and members of the board of commissioners of the city answered by general demurrer and special exceptions to plaintiff's petition, and by special pleas, the nature of which need not be here stated.

They also, by cross-action, asked judgment over against the defendant W. L. Moody, Jr., for any damage or costs that might be adjudged against them.

The trial in the court below without a jury resulted in a judgment in favor of all of the defendants.

The ordinance referred to and made a part of plaintiff's petition is as follows:

"Whereas, W. L. Moody, Jr., is the owner of that part of the Northwest block of Outlot No. One Hundred Eighteen (118), lying north of the Galveston County Seawall right-of-way, as delineated upon the map adopted by the County Commissioners Court of Galveston County, Texas, at the meeting held on August 23, 1902, a copy of which said map is of record in the Deed Records of Galveston County, Texas, in Volume 194, on pages 1, 2, 3 and 4; and

"Whereas, the said W. L. Moody, Jr., is desirous of erecting on said premises a hotel at a cost of approximately $300,000.00, and said premises are of insufficient area to contain such proposed building; and

"Whereas, said hotel building is needed for the accommodation of visitors to the City of Galveston, and its construction will increase the taxable value of real estate in said City; and

"Whereas, the sidewalk on the south side of Avenue Q, adjacent to the north building line of said premises, has been but little used by pedestrians, and is used largely for the purposes of storage; now, therefore,

"Be it ordained by the board of commissioners of the city of Galveston, as follows:

"Section 1. That that portion of Avenue Q between the south curb and the property line, extending from the east property line of Tremont Street, to the north line of the Seawall Boulevard, be, and the same is hereby abandoned, discontinued and closed as a public street and thoroughfare as long as it is used by W. L. Moody, Jr., his successors or assigns, in connection with the hotel to be erected and maintained on that part of the northwest Block of Outlot No. One Hundred Eighteen (118), lying north of Galveston County Seawall right-of-way, or any part thereof.

"Section 2. That the closing of the part of the street mentioned and described in Section 1 of this ordinance is made and granted upon the express condition, and for the expressed consideration, that the said W. L. Moody, Jr., and/or his successors and assigns, will commence the construction of a hotel on said premises described in said ordinance, within two years from the date of the passage hereof, and complete the same at a cost of not less than $300,000.00, and maintain such hotel on said part of the northwest block of Outlot No. One Hundred Eighteen (118), and failure of the said W. L. Moody, Jr., his successors or assigns, to so commence the erection of such hotel and erect, complete and perpetually maintain the same, shall, without further action on the part of the City of Galveston, forfeit and revoke this ordinance and every part thereof, and the possession of the parts of the street hereby closed, shall at once revert to the City of Galveston, to be used by it as a public thoroughfare.

"Section 3. That said W. L. Moody, Jr., hereby agrees, undertakes and promises to hold the City of Galveston harmless and indemnify it against all suits, costs, expenses and damages that may arise, or grow out of the closing of the aforesaid part of said Avenue Q, or by reason of his said occupation thereof.

"Section 4. The City of Galveston does not part with, and expressly reserves the right and duty at all times to exercise in the interest of the public, full superintendence, regulation and control in every respect over the rights, privileges and permission hereby granted, and especially in all matters connected with the police powers of said City.

"Section 5. This ordinance shall take effect and be in force if within ten days from the passage hereof, said W. L. Moody, Jr., shall signify his agreement hereto and accept the said ordinance and all of its terms in writing, which acceptance shall be deposited with the Secretary of the City of Galveston.

"And in the event of the failure of said W. L. Moody, Jr., to so accept this ordinance, it shall never take effect, or be in force."

At the request of appellant, the trial court filed conclusions of fact and law which contain the following findings of fact:

"1. I find that on the 15th day of September, 1927, and prior thereto to the 25th day of March, 1907, W. L. Moody, Jr., one of the defendants herein, was the owner in fee simple of the property known as 'that portion of the Northwest block of Outlot 118, lying north of the Galveston County Seawall right-

of-way;' * * * that said plot of ground is located on what is known as the beach front of the City of Galveston and is bounded on the south by the seawall boulevard, on the north by Avenue Q, and on the east by 22nd Street and on the west by 23rd Street. The west line of said plot of ground has a length of 120.66 ft. The south line of said plot has a length of 285.33 ft. The north line of said plot has a length of 258.5 ft., said lot coming to a gradual point at its east corner.

"2. That Avenue Q commences at 22nd Street, which is also the east corner of said plot of ground hereinabove referred to, and extends westerly to the city limits, a length of approximately two miles. Avenue Q is a street 70 feet wide, being divided into sidewalks on each side thereof of 16 ft. each, with a width between sidewalk curbs of 38 ft. Said Avenue is now, and has been for 40 years or more, a publicly used street in the City of Galveston and for many years has been kept up and improved as a street by the City of Galveston.

"3. Plaintiff, Louis Sigel, is now, and has been for many years, the owner of Lots Nos. 8 and 9 and a part of Lot 10 in the Southwest Block of Outlot No. 93, in the City and County of Galveston, Texas, comprising as a whole a plot of ground 117 ft. 2.6 in. by 120 ft. deep, located * · * * on the north side of Avenue Q and extending 117 ft. 2.6 in. westward from the corner of 22nd Street; that the said Louis Sigel has now, and has had for a number of years, on said property, two frame buildings which are now, and have been for some years, operated as hotels with a restaurant in connection with the most easterly of said buildings.

"4. That on the 15th day of September, 1927, the Board of Commissioners of the City of Galveston passed an ordinance in which it was declared among other things, in substance, that, whereas, W. L. Moody, 'Jr., was the owner of the Northwest Block of Outlot No. 118, and desired to erect on said premises a hotel at a cost of approximately $300,000.00 and that said premises were of insufficient area to contain such proposed building, and that, whereas said hotel building was needed for the accommodation of visitors to the City of Galveston and its construction would increase the taxable value of real estate in the City of Galveston, and that, whereas a sidewalk on the south side of Avenue Q adjacent to the north building line of said premises had been little used by pedestrians and was used largely for the purposes of storage, said portion of Avenue Q between the south curb and the property line, extending from the east property line of Tremont Street to the north line of the Seawall boulevard, was declared abandoned, discontinued and closed as a public street and the said W. L. Moody, Jr., was authorized to utilize said sidewalk in con-

nection with the construction of said hotel building. That the plaintiff does not own the fee to that part of the street so closed and abandoned.

"5. That said ordinance contained the following provision:

"'Sec. 4. The City of Galveston does not part with, and expressly reserves the right and duty at all times to exercise in the interest of the public full superintendence, regulation and control, in every respect, over the rights, privileges and permission hereby granted, and especially in all matters connected with the police powers of said City.'

"6. That thereafter the said W. L. Moody, Jr., organized a corporation known as the 'Buccaneer Hotel Co.' and on the 10th day of April, 1928, conveyed said Northwest Block of Outlot No. 118, referred to and described above, to said Buccaneer Hotel Co., a corporation, and the said W. L. Moody, Jr. became a stockholder in said corporation and president thereof, which position he has continuously occupied to the trial of this cause.

"7. I find that the said Louis Sigel had actual notice of the passage of said ordinance and of the formation of said Buccaneer Hotel Co. and of Mr. Moody's connection therewith.

"8. I find that in compliance with Sec. 5 of said ordinance, W. L. Moody, Jr., did, within ten days from the passage thereof, signify his agreement thereto and acceptance of said ordinance and all of its terms in writing, which said acceptance was deposited, within the time required by said ordinance, with the Secretary of the City of Galveston. * * *

"11. I find that prior to the actual commencement of the construction of the Buccaneer Hotel, Mr. Shearn Moody, Vice-President of the Buccaneer Hotel Co., at the special instance and request of his father, W. L. Moody, Jr., President of the Buccaneer Hotel Co., defendant herein, called upon Mr. Sigel in person and said to him, in substance, that he understood he (Sigel) had some objection to the proposed hotel occupying the sidewalk on the south side of Avenue Q, and Mr. Moody explained to Mr. Sigel that it was the intention of the Hotel Company to construct a part of the hotel on the south sidewalk of Avenue Q between 22nd and 23rd streets substantially as it was in fact thereafter constructed, and asked Mr. Sigel if he had any objection or complaint against such action, and that Mr. Sigel informed Mr. Moody that he did not have any complaint or objection to such action; that this information was communicated by Shearn Moody to his father, W. L. Moody, Jr.

"12. That again during the course of the driving of piling on the sidewalk in question for the construction of the building Mr. Shearn Moody took Mr. Sigel personally to the site and showed him by means of lines the

exact part and portion of the sidewalk proposed to be used and that Mr. Sigel again stated to Mr. Moody that he had no objection or complaint to the using thereof.

"13. I find that the officers of the Buccaneer Hotel Co., and particularly Mr. W. L. Moody, Jr., President thereof, prior to the construction of the hotel as well as during the construction thereof, entertained some doubt as to the Hotel Co.'s legal right to use a part of the sidewalk over the objection of the abutting property owner. His construction of the ordinance was that it operated as a consent from the City to use said sidewalk and estopped the City from denying such consent; but, as above stated, he entertained some doubt as to the right of an abutting property owner to complain. In connection with the findings in this paragraph, I conclude and find that Mr. Sigel consented, acquiesced and agreed to the construction of the portion of the hotel in question on the sidewalk as now complained about; that such consent was unconditional and unqualified and was not revoked until after it had been in good faith acted upon by the Hotel Company and the hotel completed.

"14. That the consent, acquiescence, and agreement of the plaintiff, Louis Sigel, to the construction of the encroachment in question, was intended to, and did in fact, influence and lead the defendant, Buccaneer Hotel Company, into building the hotel on the sidewalk in question, and was relied upon by it, and but for such consent, acquiescence, and agreement said defendant would not have built any part of the hotel on the sidewalk in question.

"15. I find and conclude from the evidence adduced in this cause that the plaintiff, Louis Sigel, has suffered no special damages differing in kind from that suffered by the public, and no damages otherwise, from the encroachment of the hotel building upon the side-walk, as complained of in his petition. In this connection, I find and state that it was admitted at the conclusion of the trial by plaintiff's attorney of record that he had failed to show any damage accruing to Mr. Sigel or his property by the encroachment in question.

"16. I find that in constructing the hotel, the building encroaches on the sidewalk a width of 11.85 ft. for a length of 125.8 ft., beginning at a point 104.7 ft. from the northwest corner of said Northwest Block of Outlot No. 118, which is also the southeast corner of 23rd street and Avenue Q; that from the southeast corner of 23rd street and Avenue Q, for a distance of 104.7 ft. to the commencement of said encroachment the sidewalk has a full width of 16 ft. and is elevated and permanently paved with cement paving and well lighted; that this improvement was done at the expense of the Buccaneer Hotel Company that the remainder of the sidewalk, a distance of 125.8 ft. from the commencement

of the obstruction, has been reduced to a width of 5.15 ft., which said space is likewise paved with cement and elevated to conform to the height of the sidewalk west of said obstruction. I also find that said width of 5.15 ft. of sidewalk affords ample and convenient space for the passage of pedestrians who may elect to use that side of the street. In this connection, I also find that, because of the peculiar shape of the plot of ground on which the hotel is constructed and the relation thereto of the streets and other sidewalks, pedestrians other than those going to and from the Buccaneer Hotel would have little cause or desire to use conveniently the south sidewalk of Avenue Q between 22nd and 23rd streets, and particularly the east 125.8 ft. thereof.

"17. I find that the encroachment in question consists of a substantially built 2-story steel and concrete building forming an integral part of the main hotel and in which is housed the boiler room, part of the coffee shop, part of the office and the main lobby on the second floor and other important and necessary parts and accessories to the hotel building proper. I also find that the Buccaneer Hotel as a whole is a 11-story building costing approximately $1,000,000.00.

"18. I find that if the Buccaneer Hotel Company were required at this time to remove the encroachment from the sidewalk it would cost approximately $260.000.00 to remove such encroachment and remodel the hotel building so as to accommodate the departments in the main hotel building within the property lines proper which are now housed in that portion of the building forming the encroachment. I also find that regardless of the cost of such remodeling, would otherwise seriously impair the usefulness of the building as a hotel or for other purposes if such remodeling became necessary. I find that the actual cost of tearing down, destroying and removing the building constituting the encroachment, without any regard to the necessary repairs or remodeling of the hotel building property, would cost approximately $20,000.00.

"19. That the nuisance claimed to exist by reason of garbage cans and other receptacles placed upon the sidewalk on the south side of Avenue Q, and north of the encroachment in question, was abated before the trial of this cause, and no damages to the plaintiff's premises growing out of such alleged nuisance was proved."

Upon these fact findings the trial court based the following conclusions of law:

"From the foregoing findings of fact, I find the following conclusions of law:

"1. That Mr. Sigel's consent, acquiescence, and agreement to the construction of the encroachment in question as it was in fact constructed, prior to, and during the time it was

being erected, and his failure to voice any protest against such action, until long after the hotel was fully completed and in operation, precludes him from maintaining this suit for the mandatory injunction prayed for, and he is now estopped from seeking the aid of a court of equity to compel the removal or destruction of said encroachment.

"2. That the plaintiff, Louis Sigel, should take nothing by his said suit, and that his prayer for injunctive relief, and in the alternative for damages, be in all things denied."

May of these fact findings of the trial court are based upon uncontradicted evidence, and all of them are abundantly sustained by the evidence.

■ In this state of the record it is unnecessary and would serve no useful purpose to consider and discuss the numerous propositions presented in appellant's brief. All of these propositions become immaterial because of the fact finding of the trial court that appellant consented and agreed to the obstruction of the street of which he now complains, and that, relying upon this agreement, appellees Buccaneer Hotel Company and W. L. Moody, Jr., have expended large sums of money which would be lost to them if appellant is now permitted to enforce his legal rights in the street. We think the following counter-proposition presented in appellees' brief is a conclusive answer to appellant's suit: "The express oral consent given with full knowledge of the facts, by the owner of abutting property, to the erection of a building in a street the fee of which is not owned by him; is irrevocable after it has been acted upon and large sums expended in the erection of valuable improvements in reliance thereon, and he is estopped thereby from maintaining a suit in equity for a mandatory injunction requiring its removal, or for the recovery of damages, and the court did not err in rendering judgment for appellees."

■ This proposition is based upon the maxims of equity jurisprudence which forbid one to take advantage of his own wrong, and require that he who comes seeking relief from a court of equity to come into court with clean hands. These principles of equity jurisprudence are so sound in reason, so consonant with good conscience and fair dealing between man and man, and are so imbedded in American and English jurisprudence, that the citation of any of the numerous decisions in which they have been applied would seem unnecessary. But it will not be amiss to quote from a few of the authorities on this question in which these principles are aptly stated and applied.

In the case of Westerman v. Mims, 111 Tex. 29, 227 S. W. 178, 181, our Supreme Court, in considering a case in which the plaintiff sought relief by mandamus, and denying him such relief, say:

"Among the principles regulating the issuance of writs of mandamus, which cannot be regarded otherwise than as clearly settled, is one which is thus stated in section 1380 of Spelling's Extraordinary Relief:

"'While the remedy by mandamus is not equitable, but strictly legal, yet by analogy to the principles prevailing in courts of equity it is a uniform requirement that the relator in seeking this remedy must come into court with clean hands.'

"To the same effect, see section 26, High's Extraordinary Legal Remedies.

"Justice Lamar, speaking for the Supreme Court of the United States, announces the rule to be that—

"'Mandamus * * * will not be granted in aid of those who do not come into court with clean hands,' since the writ issues 'to remedy a wrong, not to promote one.' Turner v. Fisher, 222 U. S. 209, 32 S. Ct. [37], 38, 56 L. Ed. 165.

"See, also, Nevell v. Terrell, 99 Tex. 356, 87 S. W. 659, 89 S. W. 971; Hale v. Risley, 69 Mich. 598, 37 N. W. 570; U. S. ex rel. Stevens v. Richards, 33 App. D. C. 418, 419.

"The rule that he who seeks a mandamus must present his application with clean hands has no different meaning from the general maxim in equity that 'he who comes into equity must come with clean hands.'

"Prof. Pomeroy states the meaning of the maxim as follows:

"'It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy.'

"He adds:

"'It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose foundation is good conscience.' 1 Pomeroy's Equity Jurisprudence, §§ 397, 404."

In Johnson v. Byler, 38 Tex. 606, it is said:

"Legal estoppels exclude evidence of the truth and equity of the particular case, to support a strict rule of law on grounds of public policy.

"Equitable estoppels are admitted on the ground of promoting the equity and justice of the particular case, by preventing a party from asserting his rights under a general technical rule of law, when he has so conduct-

174

ed himself that it would be contrary to equity and good conscience for him to allege and prove the truth."

In the case of Lewis v. Pingree National Bank, 47 Utah, 35, 151 P. 558, L. R. A. 1916C, 1260, the Supreme Court of Utah, in an able and well-considered opinion, holds that a plaintiff otherwise entitled to an injunction to prevent an obstruction in a public street is estopped from invoking such remedy when he stands by and acquiesces by his silence in the expenditure by the defendant of a large sum of money in the erection of the building which encroaches upon and partially obstructs the street. This opinion states the rule in such cases to be that, although an encroachment on a public street necessarily constitutes a public nuisance, such nuisance will not always be abated at the instance of a private person; that a court of equity is not bound to make a decree which will work greater injury than the wrong which it is asked to redress, and would operate inequitably and contrary to the real justice of the case.

In the case now before us, the trial court finds, and the great preponderance of the evidence shows, that plaintiff expressly agreed and consented to the use of the street by the appellees in the construction of the hotel, and expressly declared to the agent who was sent by defendants to ascertain whether plaintiff objected to the encroachment on the street of which he complains in this suit, that he had no objection and that the construction of the building as it now stands would increase the value of his property, and that, in reliance upon this assurance of plaintiff, defendants placed a portion of the hotel in the street to the extent shown in the findings of the trial court. No stronger case of equitable estoppel would be made than this, and the estoppel extends as well to the claim for damages as to the right to an injunction.

But appellant contends that the plea of estoppel is fatally defective, in that it fails to allege that the defendants relied upon the statements of plaintiff before set out, and but for such statements would not have obstructed any part of the street in the construction of the hotel; and, there being no pleading to support the evidence establishing this essential element of estoppel, such evidence was inadmissible over plaintiff's objection, and the judgment should be reversed on this ground.

■ This contention cannot be sustained. The sufficiency of the plea was only called in question by a general demurrer against which every reasonable intendment of the pleader must be indulged. Chapman v. Mooney (Tex. Civ. App.) 257 S. W. 1106; City of Austin v. Schlegel (Tex. Com. App.) 257 S. W. 238; Stovall v. Texas Co. (Tex. Civ. App.) 262 S. W. 152.

■■ We think the plea of estoppel before set out was sufficient as against the general demurrer presented by plaintiff. It is certainly a reasonable inference from the averments of the plea that appellees relied upon the consent and agreement of plaintiff in placing a portion of the hotel building in that portion of the street which was closed by the order of the city board of commissioners, and would not have so encroached upon the street if plaintiff had not consented and agreed to such encroachment. This being a reasonable intendment of the pleading, the failure to specifically allege such reliance could only be raised by a special exception to the plea. No such exception was presented, and it is a settled rule of decision in this state that such defects in a pleading cannot, in the absence of a special exception, be taken advantage of by objection to the evidence. The following cases directly support these conclusions: Shaller et al. v. Allen (Tex. Civ. App.) 278 S. W. 873; Western Medical Arts Bldg. Corporation v. Bryan et al. (Tex. Civ. App.) 5 S.W.(2d) 862; Colorado Canal Co. v. McFarland & Southwell (Tex. Civ. App.) 94 S. W. 400; Patterson & Wallace v. Frazer (Tex. Civ. App.) 79 S. W. 1077; Black v. Drury, 24 Tex. 289.

In the case last cited the reason and justice of the rule forbidding defects in pleadings, good as against a general demurrer, to be raised only by objection to the evidence, is thus clearly and forcibly stated:

"The question in this case, is, whether or not, the plea of reconvention was sufficient to authorize the admission of any evidence offered in support of it. This is a mode of testing the sufficiency of pleading, which must be entertained with great caution; for it is adopted at a stage of the trial, when all opportunity of amending the pleading, if defective, is lost. The substantial rights of a party may thereby be lost forever, by the unskilfulness, or even inadvertence of the pleader. A party announces himself ready for trial, upon a plea which seeks to present a meritorious defence. No objection has been taken to it, and he is apprised for the first time, that its sufficiency is contested, by an objection to his evidence. The unskilful or negligent practitioner is thus entrapped, without being in a position, to attach any blame to his antagonist for the predicament in which he finds himself placed. If his plea is really defective, he cannot complain that the opposite party has not aided him, by excepting and pointing out the defect, at a time when he could have cured it, by an amendment of the plea.

"On the other hand, the party who seeks such an advantage, by not excepting to the plea, but by objecting to the admission of the evidence under it, must expect that the plea will be taken and understood in its full force against him. He has waived the right of

making special exceptions to it. If it be good on general demurrer, and will sustain a verdict and judgment rendered upon it, his objection cannot prevail."

It follows from these conclusions that judgment should be affirmed. Justice GRAVES dissents from this affirmance, and will file a statement of the grounds of his dissent.

Affirmed.

GRAVES, J. (dissenting).

This action, although in character bilateral, tripartite, and alternatively directed—that is, brought by appellant, a directly abutting owner in each of his dual capacities as such, the one as a private person, the other as a representative of and for the benefit of the public, both against the city of Galveston and the Buccaneer Hotel Company, a private corporation, primarily for the removal of the street obstruction by way of injunction, and alternatively for consequential damages to his own property—has resulted in no recovery on either count for himself individually, or for the other members of the public he thus essayed to serve; this despite the uncontroverted fact that so large a portion as 11.85 by 125.8 feet of an irrevocably dedicated 70 foot wide public street had already been, with the express approval of the city of Galveston through a purported ordinance, physically appropriated in the erection thereon of a permanent building as for exclusive and perpetual use by the hotel company for its private business.

This adverse result, proceeding in the first instance from a refusal to admit the proof appellant proffered of damage in his private right, in the second from a finding that he had estopped himself in both capacities from a recovery on either declared upon cause of action by having in advance orally consented to the erection of the encroachment, seems to me, under the facts, to run askew to the now well-defined law of Texas against such a diversion of the public thoroughfares to purely private use.

The able trial court did not then have the benefit of the opinion of the Commission of Appeals on rehearing in Bowers v. City of Taylor, 24 S.W.(2d) 816, nor of this court's more recent holding in Mrs. Julia A. Coombs v. City of Houston, 35 S.W.(2d) 1066, opinion filed November 20, 1930.

While both corporate defendants declared upon the ordinance as such a valid exercise of the city's charter powers granted by chapter 37, Special Acts of the 28th Legislature of Texas, as authorized it to close and vacate for that express purpose the portion of the street so actually appropriated, only the hotel company added the plea of estoppel from a claimed consent; the city contenting itself, after denying, first, that W. L. Moody, Jr., had ever complied with section 5 of the ordi-

nance requiring him to file a written acceptance thereof within ten days from its passage, second, that any of its officers or agents had participated in the physical closing thereof, and pleading two years' limitation, with pleading over against its individual codefendant, W. L. Moody, Jr., on an alleged agreement between the two whereby he, in consideration of the city's passing the ordinance and permitting him to accordingly appropriate that much of the street, undertook "to hold the City of Galveston harmless and indemnify it against all suits, costs, expenses, and damages that may arise, or grow out of the closing of the aforesaid part of said Avenue Q, or by reason of his said occupation thereof."

So that, the trial court having found that Mr. Moody did file the acceptance called for under section 5 thereof, the fact remains that the city on its part neither set up nor claimed any such consent, and alleged no defense unless this ordinance constituted one.

It is respectfully here submitted that both litigants acted upon a misconstruction of the charter powers of the city of Galveston, and that the ordinance of September 15, 1927, enacted in furtherance of such understanding between them, which plainly on its face amounted to no more than a contract whereby the entire 16 feet of Avenue Q along the south side thereof, all the way from Tremont to Twenty-Second street, was to be perpetually closed to all others and turned over to Mr. Moody for his exclusively private use, in consideration of his building and forever maintaining a $300,000 hotel on his own property and this strip of Avenue Q in connection therewith, was not only null and void, but the portion of the building so erected on the street, being in consequence a purpresture and a nuisance per se, left the city as well as the hotel company in the attitude of wrongfully maintaining it as such. Bowers v. City of Taylor (Tex. Com. App.) 16 S.W.(2d) 520; Id. (Tex. Com. App.) 24 S.W.(2d) 816; Radford Grocery Co. v. City of Abilene (Tex. Com. App.) 34 S.W.(2d) 830; Coombs v. City of Houston, supra; American, etc., Co. v. Seelig, 104 Tex. 16, 133 S. W. 429; Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288; Southwestern Telegraph & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049, 1052; Ort v. Bowden (Tex. Civ. App.) 148 S. W. 1145; Galveston, etc., Ass'n v. Ort (Tex. Civ. App.) 165 S. W. 907; Boone v. Clark (Tex. Civ. App.) 214 S. W. 607; Quanah, etc., Ry. Co. v. Swearingen (Tex. Civ. App.) 4 S.W.(2d) 136; Blair v. Astin (Tex. Civ. App.) 10 S.W.(2d) 1054; City of Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924.

As these cited holdings disclose, no courts perhaps have gone further than those of Texas in protecting the use of public streets to the people generally and to abutting owners thereon particularly; it therefore becomes

unnecessary to go afield for authority. On a state of fact on this feature not in legal import different from that here obtaining, the Commission of Appeals, with the express approval of the Supreme Court, in Bowers v. City of Taylor, supra, not only held an ordinance less objectionable in terms than the one here involved violative of the State Constitution as undertaking both to barter away the city's legislative powers and to make an irrevocable or uncontrollable grant of special privileges, but also that an abutting owner against whom it was sought to be applied was not restricted to a suit at law for damages, but had a cause of action for injunctive relief as well. The two rights were therefore not interdependent, as the appellee hotel company earnestly contends on the appeal.

In the oral argument before this court, the able and high-class counsel for appellee hotel company admitted the invalidity of this ordinance and that the city, if it was so disposed, could require the company to remove so much of the building as was in the street, but insisted notwithstanding that the court could not in this proceeding order that done at the instance of this appellant.

The further suggestion is now ventured that that position, too, is unsound.

Appellant had purchased his property with especial reference to its being located at this corner on this dedicated, open, and existing public street of 70 feet in width, as then shown on the ground and on the accepted plan of the city, on the faith of which he bought; it was situated in the same block with and directly across Avenue Q from that part of it the complained of building intruded upon, the locality being among the most frequented ones on the city's water front; in other words, he possessed all the rights and capacities of an immediately abutting owner. The city itself, as in Ort v. Bowden, supra, had not only abdicated its obligation as a trustee for him along with the rest of the public to keep that portion of the street unobstructed, but had even joined with the hotel company in the attempt to perpetually close it, which attitude it still maintains by making common cause here with its coappellee, the hotel company, in insisting that its action then was not an invalid exercise of its charter powers, and that it is in no way liable.

Such an abutting owner, by the rule of law rather generally recognized, especially in Texas, has two separate and distinct interests in the street—the public one that he enjoys in common with all other citizens, and the strictly private one that arises from his ownership of the property located thereon—the public right to use it for purposes of travel and transportation, which is enforceable through him as a member of it, being paramount, his own individual one subordinate, 28 Cyc. page 856; City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924, 925; not only so,

but the city here, as the embodiment of the public authority, with all the consequent power over and responsibility for the dedicated streets within its limits, not only had the right, but the nondelegable and inescapable duty to the public as well, to at all times open, protect against purprestures, and maintain them in usable condition as such ways. Furthermore, to quote the text in 44 Corpus Juris, at page 1011:

"The general rule that a city cannot relinquish its power to control and regulate its streets applies to relinquishment of the power to remove obstructions and encroachments.

"A private person may have the power to remove street obstructions, and the fact that one has a private interest in securing the removal of an encroachment upon a street does not deprive him of the right as one of the public to demand enforcement of the public right, nor does the fact that he has no private interest interfere with his assertion of the public right." People v. Gross, 137 App. Div. 77, 122 N. Y. S. 135; People v. Keating, 168 N. Y. 390, 61 N. E. 637; People v. Halsey, 37 N. Y. 344, 348.

Our own Supreme Court, in the Zorn Case, supra, expressed the same principle for a somewhat different application in this declaration: "The effect of the deed, then, from Mrs. Zorn and her husband to the different purchasers of lots in Zorn's Addition, was to convey to such purchasers the right that they and all persons should be permitted to use the streets and alleys for the purposes designated upon the said plat for all time, and this conveyance vested in the public and in the city of Corsicana, as the organized representative of the public, the right to take possession of and use said streets and alleys whenever the progress and development of the town should make it necessary so to do."

Likewise, in Coombs v. City of Houston, supra, this court held the interveners, as mere purchasers of abuting property on Yale street subsequent to its dedication as such, entitled to require the removal of obstructions therefrom as representatives of the public.

So that both the public and the private rights in this street were here involved, and appellant, alleging and proving himself to be a member of the public as the sort of abutting purchaser referred to along with his distinctly individual cause of action of the same purport, also sued as such for the benefit of all the public, making the city a party defendant because of its claimed repudiation of all its governmental duties, specifically in practically every count of his rather ineptly drawn petition, fifteen in all, charging the violation by both the hotel company and the city of the dominating public right to have the thoroughfare kept open for its full width; and finally expressly asking, in behalf of the public, for its restoration in this prayer:

"Wherefore, this plaintiff prays that this Honorable Court issue its most gracious writ of injunction against the defendants and each of them from in any manner acting under said illegal contract and ordinance, and restraining and enjoining them and each of them from obstructing or closing any portion of said Avenue Q, and commanding them and each of them to re-open the said Avenue Q, and removing all obstructions therefrom, and compelling and commanding them and each to re-instate said Avenue Q to its original condition with hard surface paved-sidewalks along the south side thereof, and commanding them and each of them to leave said Avenue Q open for use by the plaintiff and by the plaintiff's agents, servants, employees, tenants, and guests, and by the public generally; and that the entire sidewalks along the south side of said Avenue Q be maintained as a public sidewalk on said street, and that said closing of said street be declared to be a nuisance, and that the same be in all things abated; that said injunctive relief and the abatement of said nuisance, be granted to plaintiff upon the final hearing of this cause, and plaintiff prays for such other and further relief, special and general, in law and in equity, to which he may show himself entitled."

That he so sued is accordingly not to me debatable. The trial court overruled general and special demurrers to this petition, none of which were leveled at this declared upon dual capacity of the plaintiff, and no complaint of that action is made.

These being the reaches of the action, and the undisputed evidence having established all the essentials thereof substantially as averred, among them the original platting, dedication, and long user as such of the 70-foot public thoroughfare, the urgent need by all the public for its full width because of the frequent and increasing congestion of travel in that particular block, the respective and relative abutting ownerships of appellant and the hotel company, the passage of and the action of both the city and the hotel company under the relied upon ordinance, including the physical closing by erection of the permanent building thereon of 11.85 by 125.8 feet out of the total of 16 by 258.5 feet authorized by the purported grant, and the resulting exclusion as for all time of all others than the hotel company from any use of so much of the street—the conclusion seems inescapable that the remedial writ so sought should have issued.

It is a rule of general application that an act done in an individual capacity will not estop one in his representative capacity, and vice versa. 21 Corpus Juris, paragraph 187, page 1184, footnote 65 and 64, and cited authorities.

Furthermore, a municipal corporation, in respect of acts done in the strict scope of its so-called governmental or public capacity, in which alone the city of Galveston was called upon to act in this instance, cannot be estopped. 21 Corpus Juris, paragraph 190, page 1187, footnote 80, and cited cases. See, also, as hearing on the question, Nueces County v. Gussett (Tex. Civ. App.) 213 S. W. 725.

It follows that the case here made, as seems to me, is neither upon principle nor the weight of authority ruled by the doctrine of equitable estoppel by consent, as concretely interpreted and applied by the learned trial court in this instance; rather has that defense in actions for the removal of obstructions from dedicated streets been quite generally if not exclusively held to control only purely individual rights as between private parties, not to operate either against public rights or governmental authority.

This distinction is clearly pointed out by the Supreme Courts of Wisconsin and of California, in Walterman v. Village of Norwalk, 145 Wis. 663, 130 N. W. 479, Ann. Cas. 1912A, 1176, and Amestoy v. Elec. R. Transit Co., 95 Cal. 311, 30 P. 550, respectively, wherein by necessary inference at least it is held that, while a purely private right may be sold, given away, or perhaps lost through estoppel, that doctrine is not applicable to public rights, hence any agreement not to sue to vindicate the public right, or not to object to the creation or maintenance of a public nuisance, is void as being against the public policy of the land.

Hence the fact that appellant personally in advance made oral assurance to the hotel company that he would not object to the construction in the street, which finding below must be accepted because based on sufficient evidence, constituted no valid defense to a suit for its removal in favor of the city. 44 Corpus Juris, page 1019, paragraph 3839, footnote 99, and cited authorities.

That would merely amount to permitting it, through the indirect method of hiding behind the skirts of the hotel company, to deprive itself of the power to perform its public duties, a thing that would be contrary to public policy, as well as against the positive law. Elliott on Roads and Streets (4th Ed.) vol. 2, p. 1093.

If it were conceded that the question of whether appellant suffered special damage from such an encroachment different in kind from that cast upon the general public was one of fact, yet to say that this annihilation of the public right to have the whole of an actually existent, irrevocably dedicated, and momentarily used public thoroughfare kept open for its use does not inflict damage as a matter of law is to negative the generally if not universally accepted rule. Opinion on rehearing in Coombs v. City of Houston, supra, and authorities therein cited; Shelton v. Phillips (Tex. Civ. App.) 229 S. W. 967, and quoted holdings.

Consequently, in cases like the one at bar, where not only the public right in, but also its authority and responsibility over, the streets is directly in issue with its organized representative before the court as a party, the only matter to be alleged and proved is the invasion of the public right; that having been conclusively if not admittedly shown here, the cost of removing the obstruction became an immaterial consideration, and, the city of Galveston having declined to do so, the court should have ordered the removal, agreeably to the law of Texas as thus declared by the San Antonio Court of Civil Appeals in Dozier v. City of Austin, 253 S. W. 554, 555: "A city cannot recover damages arising from the obstruction of streets. It has the right to have them removed. Appellee is a corporation organized by its citizens to administer their affairs, have their laws executed, protect their streets, alleys, and public grounds from trespassers and invaders of their rights, and, in seeking the aid of the courts of Texas to remove obstructions from streets and alleys placed there by trespassers and those acting in defiance of law, it does not devolve upon such corporation to allege or prove damages or that it has an adequate remedy at law for such relief. It has no such remedy at law. The only matter to be alleged or proven was the invasion of a public right. Dillon, Mun. Corp. § 1130; State v. Goodnight, 70 Tex. 682, 11 S. W. 119; Oxford v. Willoughby, 181 N. Y. 155, 73 N. E. 677; Woodbridge v. Middlesex Water Co. (N. J. Ch.) 68 A. 464. This action was brought by the guardian of the public to conserve the rights which the public have in the alley as a highway. The duty rested on the city to have the obstruction removed. Joyce on Injunctions, § 1285, and authorities cited in footnote."

The leading authorities relied upon by appellees, such as Shelton v. Phillips, supra, Bailey v. Culver, 84 Mo. 531, and Lewis v. Pingree National Bank, 47 Utah, 35, 151 P. 558, L. R. A. 1916C, 1260, do not upon the legal equivalent of the same state of facts hold differently. To say nothing of other distinguishing features, they were all between private parties only, involved purely private rights exclusively, and neither the public right nor the exercise of its authority over the streets either directly or through control thereof by the Court, was in any way involved. Accordingly, they each and all appear to have been ultimately determined upon what Mr. Pomeroy has been pleased to term "the balance of injury or convenience rule," which, as before shown, has no application to the preservation of public right by or through the public authority.

While there also appears to have been reversible error in relation to the appellant's claim for damages, that becomes immaterial under the view that injunctive relief in be-

half of all the public including himself should have been awarded, since he sought individual damages only in event the latter were denied.

Under these conclusions a reversal should have been ordered, and judgment here entered granting the writ of injunction substantially as prayed for. This dissent from the refusal of this court to so act is respectfully entered.

### On Motion for Rehearing.

PLEASANTS, C. J.

Either the counsel for appellant and the learned dissenting justice, or the majority of the court, have wholly misconstrued the controlling question presented by this appeal. In the motion for rehearing and the dissenting opinion, appellant's right to maintain this suit as a representative of the public is entirely based upon the claimed want of authority in the board of commissioners or city council of the city of Galveston to pass the ordinance granting appellee the right or privilege of obstructing a portion of the street of the city designated Avenue Q. The majority of the court do not deem it necessary in the determination of the merits of this appeal to decide this legal question. In so far as this question has any bearing upon appellant's right to the equitable remedy of injunction is concerned, it may be conceded that the ordinance is illegal and void, and yet appellant under the undisputed facts of this case cannot invoke the equitable power of the courts to protect himself or the general public against the claimed illegal exercise of power by the city council in authorizing the closing or obstruction of a portion of the street.

In the first place, no citizen is given the right to maintain a suit of this character unless the obstruction of the street of which he complains will cause special damage to him not suffered by the general public. Shelton v. Phillips (Tex. Civ. App.) 229 S. W. 967. This has been the settled rule of decision in this state since the opinion of our Supreme Court in the case of City of San Antonio v. Strumberg, 70 Tex. 366, 7 S. W. 754, and is supported by the highest authorities, including text-writers and the highest courts of other jurisdictions.

In addition to this, the Legislature of this state has limited the right of citizens to maintain a suit of this kind to "the owner or lessee of real property actually abutting on that part of such street or alley actually vacated, abandoned or closed." Acts 41st Legislature (Fifth Called Session) chapter 84, page 257 (Vernon's Ann. Civ. St. art. 4646a).

Whether or not this statute applies to this case in which the act complained of occurred prior to the enactment of the statute, it is an

emphatic indorsement by the Legislature of the rule of decision above mentioned.

In the second place, it seems to the majority of the court that, if appellant could be held entitled to maintain this suit for the benefit of the general public, it requires a great stretch of the imagination to construe his petition as a suit by him for the public benefit. His cause of action is primarily to protect his special interest in keeping the street open and unobstructed in its entirety, and his allegations of public injury are only mentioned incidentally in support of his claim of damage and his private right to maintain the suit.

■ We cannot bring ourselves to accept the proposition that, while appellant is estopped from bringing this suit to protect his private right (and no contention· is made in the dissenting opinion that our holding on this question is unsound), he is nevertheless entitled to maintain the suit on the ground that the ordinance authorizing the obstruction of the street is invalid, and appellant as a representative of the public can obtain a mandatory injunction requiring the removal of the obstruction. The cases of Bowers v. City of Taylor (Tex. Com. App.) 24 S.W.(2d) 816, and Coombs v. City of Houston (Tex. Civ. App.) 35 S.W.(2d) 1066, cited in the dissenting opinion, have no bearing upon this question and do not militate against the soundness of the trial court's judgment refusing the injunction.

So far as this record shows, appellant is the only citizen of Galveston objecting to or complaining of the ordinance of the city permitting the use of the portion of the street now occupied by appellee hotel company. Appellant by his affirmative consent and agreement to such use of the street, and by keeping silent while the hotel company spent a large sum of money in erecting its improvements in reliance upon his consent to such use of the street, is estopped by every rule of equity from now requiring the removal of the improvements. If the general public feels aggrieved by this obstruction, their complaint will not be heard in a court of equity when voiced only by a self-constituted representative who is estopped to complain on his own account.

GRAVES, J. (dissenting on rehearing).

Although neither defendant below plead reliance on the claim of the hotel company alone that plaintiff consented to its permanent appropriation of the public street for exclusively private uses, the city nowhere even venturing the mention of any such matter as a defense, and the hotel company wholly failing to specifically allege its having at the time relied upon it, both on the contrary expressly declaring upon the ordinance as a valid exercise of the city's power under its charter to authorize their doing that by the method of concert they in fact pursued, this court still declines to determine whether or not that was a lawful joint enterprise; if silence does not give consent that it was not, the authorities cited in the original dissent supply the deficiency.

So that, the whole undertaking having been ab initio illegal, null, and void, the parties to it must be held to have then been charged with knowledge of that fact, whatever they actually knew, since ignorantia juris non excusat; however, it is self-evident, from their contemporaneous indemnity contract wherein Mr. Moody agreed to hold the city harmless against all damnifying consequences to it from their jointly undertaking to so perpetually close part of the street, that both in advance anticipated at least the possibility of the venture's being illegal. In any event, it being so, as the Supreme Court said on rehearing in Bowers v. City of Taylor, 24 S.W. (2d) 816, at page 817: "The ordinance being void, no rights accrued to the railroad company thereunder, and its closing the street without lawful right renders it liable to whoever may sustain loss or damage."

In that case the entire public of the city of Taylor had consented to the surrender of the use of the street by voting in advance overwhelmingly in favor of authorizing it.

Who sustained loss, or damage, or the deprivation of a vested right, in this instance? Indisputably both the appellant and the other members of the general public, especially those who were also abutting owners on this street.

Notwithstanding the trial court's particular statement of a finding on that precise phase of the controversy, it appears from the other findings made, common knowledge, and the undisputed evidence, under well-settled authority in this state, as a matter of law, (1), that appellant must have suffered a loss different from that of any other member of the public, whether an abutting owner or not, in that his immediately abutting property alone was situated directly across from the obstructing two-story building, and ran west parallel with it much of its entire 125-foot projection from the thereby choked-down mouth of Avenue Q at the corner of Twenty-Second street, such obliteration of that much of a public street so serving his individual premises for greater convenience of access, light, and air, necessarily being a complete "taking" of his peculiarly appurtenant property right for all purposes in it for the private use of another within the meaning of our Constitution; (2) that the different right of the rest of the general public merely for passage back and forth over it, inclusive of any who may have been more remote abutting owners, to have that portion of the street always kept open for their use as such was like-

wise "taken" as for perpetual deprivation. See citations in former dissent; also, Bowers v. City of Taylor (Tex. Com. App.) 24 S.W.(2d) 816, 819; Quanah, etc., Ry. Co. v. Swearingen (Tex. Civ. App.) 4 S.W.(2d) 136; Radford Grocery Co. v. City of Abilene (Tex. Com. App.) 34 S.W.(2d) 830, 831.

In the case last cited, on a state of facts in legal purport the same as here obtains, the Commission of Appeals in effect upheld the conclusions just stated in this declaration of the law: "We do not think that a right in the company, to have the platform remain in the street, is shown by the evidence. The platform is a permanent structure and it occupies a portion of a public street that is designed for pedestrian travel. This appears without dispute; and the evidence leaves no room for a reasonable conclusion that the platform does not materially interfere with the use, by foot travelers, of that portion of the street covered by the platform. Primarily, the platform was erected and is being used by the company for private purposes. Granting that the city council, in 1905, did give the company permission to erect and maintain the platform in the street, as testified by the company's president, still such permission, even if given by formal action of the city council, did not invest the company with a permanent property right in the street. The city was without power thus to surrender its authority over any portion of the street or to authorize the company permanently to appropriate to a private use the part of the street upon which the platform stands. San Antonio v. Rische (Tex. Civ. App.) 38 S. W. 388 (writ refused); Bowers v. City of Taylor (Tex. Com. App.) 24 S.W.(2d) 816; 2 Elliott, Roads & Streets, §§ 828–840; 13 R. C. L. p. 169."

Such being the state of this record, upon what ground can injunctive relief, at least against the city of Galveston, be denied appellant? Certainly not upon the claim that he was restricted to an action at law in damages against either defendant; that question being directly settled in Texas the other way on rehearing in the Bowers Case, supra, where the right to injunction against each defendant was upheld, irrespective of a like alternative count for damages. In closing that opinion the Commission of Appeals, after first quoting approvingly from American, etc., Co. v. Seelig, 104 Tex. 16, 133 S. W. 429, and Southwestern Telegraph & Tel. Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049, held as follows:

"In Ort v. Bowden (Tex. Civ. App.) 148 S. W. 1145, 1148, the trial court charged the jury that, although a special injury might be sustained because of a public nuisance, the remedy is by suit for damages, if it can be so compensated. The Galveston Court of Civil Appeals, on the authority of Kalteyer v. Sullivan [18 Tex. Civ. App. 488, 46 S. W. 288], and S. W. Tel. & Tel. Co. v. Smithdeal, questioned this statement of the law and held that a citizen who suffers a special injury is not without remedy, in case the city fails to respond to its duty, nor is he remitted to an action for damages alone, although the injury suffered by him may be compensated in damages. The court further remarks: 'Certainly the citizen so injured would not be required to wait for the city to act, when the city itself has consented to the doing of the very thing which has caused the damages and without which consent the very thing would not and could not have been done, and also when, in the very suit in which the citizen asks for the correction of the wrongs from which he suffers special injury, the city joins with the other alleged wrongdoers in asking that the correction be denied.' To the same effect is Boone v. Clark (Tex. Civ. App.) 214 S. W. 607.

"And in Quanah Acme & P. Ry. Co. v. Swearingen (Tex. Civ. App.) 4 S.W.(2d) 136, the doctrine is approved that the owner of land abutting upon a street or alley, one end of which is obstructed so that he cannot have egress from his property to other streets in that direction, suffers an injury peculiar to himself by reason of the public nuisance.

"In Blair v. Astin (Tex. Civ. App.) 10 S.W. (2d) 1054, it was held that injunction will issue to prevent the closing of a street by a common source proprietor under a plat designating such street, even though the city had by deed undertaken to relinquish its public easement for street purposes in such street.

"The latter line of cases are controlling authority in this case."

If, then, this ordinance, like the one there stricken down, was void, the city of Galveston as one of the severally sued defendants, having pleaded no other defense, and being left powerless to so abdicate its proper functions as to permit, much less connive at or contract for, the private appropriation of the use itself of this street, stood before the court without excuse for not having lived up to its trusteeship for all the public by affirmatively preventing such an invasion.

Neither can the writ sought be withheld as to either appellee, as seems to me, because of the Act of the 5th Called Session of the 41st Legislature, Chapter 84, page 257 (Vernon's Ann. Civ. St. art. 4646a), invoked for the first time in the majority opinion on rehearing. That statute, perhaps enacted in an effort to obviate the effect of the Supreme Court's holding in Bowers v. City of Taylor, supra, finally decided on February 19, 1930, was approved April 4th of 1930, but did not become effective until 90 days after adjournment of the Legislature on March 20 of 1930, or on or about June 18th of 1930, whereas the judgment below in this cause had been entered on January 29th of 1930, and the appeal to this

court perfected on February 13th of 1930; so that, if ever, it did not become a law until more than four months after this court's appellate jurisdiction had attached herein. Moreover, its terms wholly fail to indicate any intention whatsoever on the Legislature's part that it should apply to or affect then pending litigation, wherefore, under the settled law, it may not be given such a retroactive effect. Mellinger v. Houston, 68 Tex. 37, 3 S. W. 249; De Cordova v. City of Galveston, 4 Tex. 470; Galveston, H. & S. A. Ry. Co. v. Wurzbach (Tex. Civ. App.) 189 S. W. 1006; McCutcheon & Church v. Smith (Tex. Civ. App.) 194 S. W. 831, 835.

Furthermore, there is, vel non, grave doubt of its constitutional validity, since its provisions appear to me to contravene not only the affirmative grant of power in section 8, article 5, of our State Constitution, to the district courts to issue writs of injunction, but all those other provisions of that instrument as well that in effect guarantee protection to the owner against the "taking" of his individual property rights for the private use of others. Certainly, by all the authorities, the right of all abutting owners to use the whole of a dedicated public street, with reference to and on the faith of which they have bought, whether or not they are such on that particular "part of such street or alley actually vacated, abandoned or closed," is as much an appurtenant property right as their adjoining lots, and I think it may not thus be taken away. Finally, this act also dogmatically essays to make the separate rights of such abutting owners to injunction and to damages interdependent—a thing our Supreme Court had just held in the Bowers v. City of Taylor Case might not be done, as pointed out in the original dissent.

In the view here taken, the controlling inquiry throughout has been whether or not in the circumstances otherwise undisputedly appearing the appellee hotel company's exclusive plea of estoppel from consent, on its merits, presented any defense, and that, since it did not for the reasons already given, while appellant's objections to the testimony under it, without his having previously excepted because it lacked the averment of reliance thereon, should have been sustained and the proof excluded, conformably to the rule as thus applied in Patterson & Wallace v. Frazer (Tex. Civ. App.) 79 S. W. 1077: "It is only where pleadings are wholly defective, and show no cause of action or no defense, that objections to testimony, because of the insufficiency of the pleadings, ought to be entertained"—the whole matter, being intrinsically impotent anyway, became immaterial.

Equally ineffective was the included averment in this plea that appellant "had actual notice of the passage of said ordinance," which also the trial court found to be a fact,

under the principle stated by the Maryland Court of Appeals in Townsend v. Epstein, 93 Md. 537, 49 A. 629, at page 634, 52 L. R. A. 409, 86 Am. St. Rep. 441: "It is not perceived how the failure to object to an ordinance which we find to be invalid and inoperative could give to the ordinance validity or effect, or authorize an act which, with or without the ordinance, was unlawful, and a public nuisance."

That appellant plainly sued as a member of and for the benefit of the public, as well as for himself individually, is reiterated; his petition, which is in the record, is shot through from paragraph XI to its close with averments that, when given the benefit of reasonable intendments, as must be done in the absence of any properly raised objection, can reasonably, it seems to me, import nothing else. Indeed in paragraphs XII, XIII, XVI, XVII, XVIII, XX, XXI, and XXII, he directly so alleges as follows:

"By the terms and conditions of said illegal contract and said illegal ordinance, it is attempted to grant and give to the said W. L. Moody, Jr., his successors or assigns, the exclusive use and occupancy of that part of said Avenue embraced in said ordinance as against the plaintiff and plaintiff's tenants, servants and employees, and as against plaintiff individually, and as a member of the general public, and as against the general public, for the term of an indefinite period of time amounting to fee simple title."

"The above named defendants and each of them purporting to act under and in pursuance of said illegal contract and illegal ordinance, have closed a portion of Avenue Q * * * and said act of closing being to the exclusion of the plaintiff, his agents, servants, tenants and employees, and to the exclusion of the public; and said defendants have blocked and barricaded the same, * * * so that the plaintiff, his agents, tenants and employees and the public in general, can no longer use the same or any portion thereof, for any purpose whatsoever, and that the said defendants * * * are appropriating said public property and designated street to their own purposes, occupancy and profit."

"That no power exists or is given or granted in or by the City Charter of said City of Galveston * * * to exclude plaintiff as the owner of said abutting and contiguous lands and as a member of the general public from the use and enjoyment thereof. * * *

"Because plaintiff, as the owner of the land and property abutting on and contiguous to said street, as well as being a member of and constituting a part of the general public, along with the other members of the public generally, has and holds a vested right in and to the use of said street, and the whole thereof for its entire seventy (70) foot width, and

which said right cannot be lawfully taken away from plaintiff, or the public generally."

"Plaintiff avers that by the closing of a portion of Avenue Q, as aforesaid, by defendants, the use by the public of Avenue Q will be restrained in that the whole of the south sidewalk of Avenue Q will be indefinitely, probably forever, permanently blockaded, discouraging pedestrians from entering along Avenue Q, and creating an unsightly and objectionable projection in front of plaintiff's property, and that the public generally will be prohibited and barred from using the south sidewalk of said property, lessening its value as a public thoroughfare and lessening its usefulness to the public generally, and to the plaintiff as a property owner, and as a member of the general public, * * * so that Avenue Q, in its application by virtue of said encroachment, on the street, has been not only closed and barred against the public use for a portion of same, but the remaining portion of same, by virtue of such encroachment and use, has been relegated to the use as an alley-way and garbage disposal-way; and as the back yard of a kitchen and furnace room, and plaintiff avers that if that portion of Avenue Q aforesaid, is kept closed by the defendant, the convenient access to the public to and fro along Avenue Q, will be forever barred."

"Plaintiff further alleges that said illegal ordinance was passed or said illegal contract was given * * * in entire and utter disregard to the rights of this plaintiff and his property, either as an owner of said property, or as a member of the general public, and without regard to the rights of any other citizens and property owners of said City who live along, use and occupy, or who own business property on the said Avenue Q; and that the said defendants and each of them * * * unless restrained by this court, will continue to keep that portion of Avenue Q named in said illegal contract, closed as against this plaintiff and the general public * * * so that same cannot be used either by this plaintiff or the general public."

"That said illegal ordinance and contract, by abandonment of said property, amounts to the destroying of the use of that portion thereof, by the plaintiff, and by the public generally, for an indefinite period of years * * * and unless defendants are required to re-open the said portion of said Avenue Q to the use of plaintiff and the public generally, plaintiff will suffer irreparable damages, wrongs and injuries to his property and property rights. * * *

"Wherefore, this plaintiff prays that this Honorable Court issue its most gracious writ of injunction against the defendants and each of them * * * commanding them and each of them to leave said Avenue Q open for use by the plaintiff and by the plaintiff's agents, servants, employees, tenants, and guests, and by the public generally."

Obviously a merely empirical expression of opinion to the contrary cannot prevail against these unchallenged averments of the pleader himself.

Wherefore, the consent as found by the learned trial court should not be held to work an estoppel against appellant's suit to protect both a public and a private property right, because: (1) It was a consent to the doing of a thing both parties must be held to have known was unlawful, that is, the maintenance of a continuing nuisance both public and private in character; (2) the city neither pleaded it at all, nor could have been absolved thereby of its bounden duty to prevent the encroachment, if it had; (3) the hotel company did not actually aver reliance on it, nor could have acquired any right to "take" any part of the public street for its exclusive and permanent private use, if it had; (4) the pleadings and proof otherwise established a clear right in appellant to the injunctive relief he sought, at all events in his capacity as a suitor in behalf of the rest of the public, and as against the city of Galveston.

To that end the motion for rehearing, in my opinion, should have been granted.